KIRK MCFARLAND v. M. E. GILLIOZ, Appellant.—37 S. W. (2d) 91.

Division Two, April 14, 1931.

*Sam M. Wear, James E. Sater, William B. Bostain* and *R. R. Brewster* for appellant.

*James A. Finch, Jacobs & Henderson* and *Thomas E. Deacy* for respondent.

WHITE, P. J.—The appeal from a verdict and judgment for $16,632 rendered in favor of the plaintiff October 26, 1927, in the Circuit Court of Jackson County, at Kansas City, for services rendered by the plaintiff to defendant in accordance with a contract of employment, as follows:

### "AGREEMENT

"This Agreement, signed and sworn to, on this 17th day of October, 1922, by and between M. E. Gillioz of Monett, Missouri, as party of the first part, and Kirk McFarland, of St. Louis, Missouri, as party of the second part

1. "Witnesseth, that the said party of the second part agrees to give his services to the said party of the first part in work pertaining to road and bridge construction, construction of buildings, drainage work and all allied and similar kinds of work in which the party of the first part may be or become engaged, the services of the party of the second part to be of a general supervisory character in assisting the party of the first part to carry out the above-mentioned construction or other work, and said party of the first part hereby

2. "Agrees, in consideration of said services to be given by said party of the second part, to pay to the said party of the second part one-fourth of all profits accruing from any work of the above-mentioned character in which the said party of the first part may be financially interested, said share of profits to be calculated and paid over on January 1, 1924, on January 1, 1925, and on January 1,

1926, provided, further, that the said party of the first part guarantees that he will pay over to the said party of the second part the sum of five hundred dollars on the first day of each month for a period of three years, the first of such payments to be made on January 1, 1923, it being understood that such monthly payments are to be counted against the said one-fourth share in the accruing profits to be divided each year as aforesaid, it being understood that this agreement shall be in force beginning November 15, 1922, and shall terminate on January 1, 1926, the aforesaid profits to be calculated and divided as of these two last mentioned dates, and

3. "Provided Also that, for the purpose of this agreement, it is understood that profits are to be divided on the aforesaid basis, on all of the aforesaid work in which said party of the first part is financially interested, from and after November 15, 1922, when the said party of the second part shall begin work for the said party of the first part, up to and until January 1, 1926.

4. "For the Purpose of This Agreement, it is understood that profits shall be considered as the result obtained by subtracting the legitimate expenditures on the works above-mentioned, from the total income or revenues on such works, and that legitimate expenditures includes the cost of all labor and materials actually and entirely consumed in such works; a proper proportion of the cost of equipment, such as machinery and tools used on the works; a proper proportion of such overhead charges as office and bookkeeping costs; the traveling and incidental expenses incurred by each party in performance of his duties in connection with the works above-mentioned, which shall include the value and operation expenses of one good moderately priced automobile for each party to this agreement.

5. "On works under way or contracted for on November 15, 1922, it is understood that the said party of the second part shall share in only such parts of the profits as are properly chargeable to such works as is accomplished after November 15, 1922, it being understood that the portion in which the said party of the second part shall share is to be calculated by multiplying the total profit on such works by the percentage of the works to be completed after November 15, 1922, said percentage to be calculated by dividing the value in money of the works yet to be completed, by the value in money of the total works. Similarly, the portion of the profits in which said party of the second part shall share on works under way at the time of expiration of this contract, shall be a percentage of the total profits on such works, such percentage to be calculated by dividing the value in money of the part of such works as is completed, by the value in money of the total amount of such works.

6. "It Is Also Understood that the 'Proper proportion of the cost of equipment' as aforesaid shall be taken to mean, on any par-

ticular job, the difference between a fair sale value of such equipment just prior to being placed on the job, and a fair sale value when its work on the job is completed, provided, that the sum of all such equipment assessments for any tool or piece of machinery shall not exceed the 'fair sale value' of such equipment when it is first used on works which fall within the scope of this agreement.

7. "It Is Also Understood that interest charges on money required to carry on the aforesaid works are not to be accounted as one of the legitimate expenses above-mentioned, on account of the fact that the carrying of this cost has been assumed as a charge to be met alone by the party of the first part, in the considerations preceding the agreement to provide profits on the basis of three-fourths to the party of the first part, and one-fourth to the party of the second part.

8. "It Is Also Hereby Agreed that, in case of a dispute as to a proper interpretation of any of the terms and conditions of this agreement, or as to the fairness and equity of any proposition submitted by either party which can be considered as being supplementary to this contract, but not changing any of its terms or conditions in any degree, each party shall select a competent and financially disinterested person as a representative, which representative shall select a mutually agreeable third person, and that both parties to this agreement will stand, to and abide by the decision of the majority of the three persons so selected.

9. "It Is Also Understood and Agreed that, at the termination of this agreement, the party of the second part shall have the option of purchasing a one-fourth interest in the contracting or construction business of the party of the first part, by paying therefor to the said party of the first part, a sum of money equal to said second party's said one-fourth share in the entire profits of the period covered by the duration of this agreement, minus living expenses for the said second party during said duration of time, which living expenses shall be considered as being three thousand six hundred ($3600) dollars per year, said contracting or construction business to be capitalized at the value of equipment and materials on hand plus the average working capital used in the business during the period of the last year of this agreement, and that the business shall then be incorporated for the above-mentioned capitalization under the laws of the State of Missouri, the shares to be divided so that the said second party owns one-fourth and the said first party owns the remainder.

"Agreeing to abide by the terms and conditions of this contract in a spirit of co-operation and fairness, we hereto affix our hands and seals this 17th day of October, 1922.

"M. E. GILLIOZ  (Seal)

"Party of the first part.

"KIRK McFARLAND  (Seal)"

The dispute between the parties turns upon the interpretation of the contract. We have numbered the paragraphs for convenience in reference.

It declares that the plaintiff for his services shall receive one-fourth of the profits of the enterprises in which the defendant shall engage, with a guaranty that the defendant shall pay $500 a month "to be counted against" plaintiff's share of the profits. Paragraph 2 provides that the plaintiff's share of the profits shall be calculated and paid January 1, 1924, January 1, 1925, and January 1, 1926. He claims that those profits for the preceding year were to have been determined and *settled* at the beginning of each year mentioned.

Defendant claims that plaintiff's share of the profits are to be determined by taking the full duration of the contract from November 15, 1922, to January 1, 1926, the losses deducted for the entire period in order to arrive at the net profits, and that result divided by four. From that quotient his monthly payments for the entire period were to be deducted.

While plaintiff was to receive five hundred dollars a month for three years beginning January 1, 1923, he was in fact paid five hundred dollars a month for the entire period of three years, one and one-half months, beginning November 15, 1922, and ending January 1, 1926—a total of $18,750.

The trial court decided that the contract was ambiguous and permitted parol evidence to show the surroundings and the interpretation of the contract by the parties to it. After that evidence was in the court construed the contract as interpreted by the plaintiff and instructed the jury accordingly. The defendant claims error in that ruling; that if the contract were ambiguous it should have been submitted to the jury to determine facts which would affect its construction. We understand appellant to claim also that the contract is not ambiguous. The plaintiff testified to conferences between himself and the defendant tending to show the construction put upon the contract by them in their settlements which took place each year during the life of the contract. The defendant did not testify and offered no evidence. The plaintiff also produced evidence to show that an audit of the books was made by the plaintiff and Mr. Moret, defendant's employee. After that audit the expense sheets kept during the life of the contract disappeared, but while the case was pending the court ordered an audit which was made by the plaintiff and Mr. Cornell, a public accountant; by stipulation of the parties the expense totals of the former audit were agreed to be correct. We do not understand that the appellant makes any objection to the figures shown by the audit.

It shows that, beginning with the work under way November 15, 1922, and ending with the year 1923, there was a net loss of $7,000,

counting off the expense and depreciation of equipment as provided in paragraph 6 of the contract.

For the year 1924, a net profit was figured of $19,643.28. That would leave nothing coming to plaintiff since the $6,000 received by him in monthly payments was more than one-fourth of the net profits.

During the year 1925 the net profit was $90,804.15; one-fourth of that, $22,701.03, would be the plaintiff's portion. After deducting $6,000—the five hundred dollars received monthly during that year—$16,701.03 would remain due him according to his construction of the contract. Some other small items unnecessary to consider entered into the calculation.

According to the defendant's claim the total net profits for the entire life of the contract should be added together, the net loss for 1923, $7,000, subtracted, and the amount resulting divided by four. From that one-fourth should be subtracted the total amount, $18,750, paid the plaintiff during the entire period. The balance, $6,272.72, according to the appellant, would be the amount due plaintiff. Appellant figures that it would be less than that.

The plaintiff testified that January 1, 1924, he suggested to Mr. Gillioz that they ought to figure up for the year 1923 and make a settlement; to this the defendant agreed. They discussed the method of figuring. The plaintiff's theory was that it should be figured on a yearly basis. Gillioz thought it should be figured on a job basis, which was in effect a yearly basis, except that each job was figured separately. Neither way showed any profit for that year. The plaintiff gave no figures which were mentioned by them for that year. January 1, 1925, they again talked over profits for 1924. The plaintiff again suggested the yearly method, figuring the revenues and expenses for the year. The defendant still held to the job theory, but on his suggestion the plaintiff figured it both ways. The results did not agree. According to plaintiff's method there was nothing coming to him. According to the method suggested by the defendant there was due plaintiff as his part of the profits something like six thousand dollars. Being informed of that result the defendant said he would think it over awhile and talk about it in a few days. Then he suggested that the plaintiff go and check it over with Mr. Moret. Afterwards the defendant said he would like to read the contract. He had not seen it since the work was started. After he read it he agreed to the plaintiff's method of calculation. That seems to be all that was said or done by the parties concerning the interpretation of the contract until it came to determine the profits for the year 1925. Defendant then refused to consider profits. He said "to hell with the contract," and refused to pay the plaintiff anything.

I. The contract provides that the party of the second part shall *give his services* to the party of the first part in work pertaining to road and bridge construction, etc., and in the second paragraph it was agreed that "in consideration of *said services* . . . the party of the first part agrees to *pay* the party of the second part *one-fourth of all the profits accruing from any work of the above mentioned character.* . . . *Said share of profits to be calculated and paid over on January 1, 1924, January 1, 1925, and January 1, 1926.*"

Thus it is clear that the plaintiff was employed by the defendant and his total remuneration was a one-fourth share of the accruing profits. Then follows in the same sentence: "the said party of the first part *guarantees* that he will pay over to the party of the second part the sum of five hundred dollars a month on the first day of each month for a period of three years, . . . it being understood that such monthly payments are to be counted against said one-fourth share in the *accruing* profits to be divided *each year* as aforesaid."

Up to that point in the contract it is plain that the plaintiff was to be paid out of the profits, but the defendant guaranteed that the profits would be not less than five hundred dollars a month during the three years, and that amount was paid monthly during the entire period. It will be noted in paragraph 9 of the contract that the party of the second part had an option to purchase a one-fourth interest in the business of the party of the first part by paying a sum equal to plaintiff's share of all the profits accruing during the term of his employment, less $3600 a year for living expenses.

By paragraphs 4, 5 and 6 all expenses of every kind, including overhead charges, traveling expenses, depreciation of equipment, were to be deducted from the profits. A method is also provided for figuring the profits on uncompleted jobs at the beginning and at the end of the contract period. The defendant was to receive no interest on the money employed in carrying on the work. Thus it is plain that there was no element of partnership or joint adventure in the enterprise. Plaintiff was an employee. The defendant was to furnish the money and equipment, and the plaintiff was employed to render his services and receive one-fourth of the profits. There is nothing in the contract indicating that the plaintiff was to share in the losses. Also he was not to be paid a salary. The word is not used. The $500 monthly was the guaranteed minimum profit. The total compensation for services was one-fourth of "accruing" profits, not *accumulated* profits. That plaintiff might not have to give his services for nothing in case no profits accrued, the defendant "guarantees" that he will pay $500 a month to be "counted against the one-fourth share of *accruing* profits," the profits to be "*calculated*"

and *"paid over"* on the first of January each year. If there were no profits the preceding year, or if one-fourth of the profits did not exceed six thousand dollars, there was nothing to divide. The $500 a month had already been paid as plaintiff's guaranteed part of the profits, and could not be discounted in any subsequent year. The settlement between the parties was yearly. The contract will not bear any other construction.

Suppose the large profit which accrued in the third year had accrued in the first year, and on settlement as provided in the contract the plaintiff had been paid his one-fourth of that profit, taking into consideration his six thousand dollars paid in monthly installments. It might have occurred that way and, according to the contract, settlement would have had to be made in that way. Then, if in the second year there had been a loss, what could the defendant have done about it? He would have had to pay the plaintiff five hundred dollars a month for that year according to his own interpretation of the contract. And if there had been still more loss during the third year he would have had to pay the five hundred dollars a month according to his interpretation of the contract. Would he then, at the end of the contract have had a cause of action against the plaintiff for over payment? The contract would not admit of that interpretation.

The defendant's argument mainly turns upon the concluding clause in paragraph 2 of the contract, as follows:

"It being understood that this agreement shall be in force beginning November 15, 1922, and shall terminate on January 1, 1926, the aforesaid profits to be calculated and divided as of these two last mentioned dates."

Appellant interprets that clause of the contract to mean that the profits shall be calculated at the end of the period on all profits and losses accruing during the entire life of the contract. If that had been the intention of the parties it would have been easy to say so in explicit terms. But that quoted clause says nothing of the kind. In fact, it is of uncertain meaning. The contract was not written by a lawyer, but by the parties to it. What is meant by the expression *"as of* the two last mentioned dates?" Suppose it means "accruing between" those dates. Even so, could it be interpreted to mean "calculated" and "paid" only at the end of the period in direct repugnance to the explicit statement that the profits were to be calculated and paid each year? Apparently it is an attempt of the parties to say that the calculation and payment of profits referred to previously in the *same sentence* on the first day of January each year were to continue through the entire life of the contract. A contract should be interpreted so as to give effect to each and every part of it. The most that can be said of that

clause quoted is that it is vague, indefinite and states nothing with exactness. How, then, in construing the contract, can it be said that that indefinite statement can nullify a clear, definite and understandable statement repeated several times? It was not a lawyer's expression that "such monthly payments are to be *counted against* said one-fourth share." "Counted against" of course means that the five hundred dollars a month is to be deducted from the profits "accruing" "each year." Can it be interpreted to mean that if the profits accruing to the plaintiff are less than the five hundred a month for a year the deficit is to be deducted from the profits of a succeeding year? That would be entirely contrary to the language that they are to be counted against "the accruing profits to be *divided each year* as aforesaid," that is "calculated" and "paid." It would nullify the purpose of the contract to pay for plaintiff's services out of the profits which are guaranteed to be not less than $6,000 a year as his share.

Following the clause quoted is paragraph 3, as follows:

"Provided, also, that for the purpose of this agreement it is understood that profits are to be divided on the *aforesaid basis,* on all of the aforesaid work, in which said party of the first part is financially interested, from and after November 15, 1922, when the said party of the second part shall begin work for the said party of the first part, up to and until January 1, 1926."

Appellant doubtless claims that that paragraph lends support to his theory. It does not say that the profits are to be figured at the end of the third year and when a final settlement is made, but it is understood that the "profits are to be divided on the aforesaid basis." What was the aforesaid basis? The calculation and payment on the first of January each year,—the only basis mentioned. Then follows paragraph 4 determining the method *how* those profits shall be calculated. That provision on its face requires that the profits shall be separately calculated on each job at the end of each year.

Although there are some ambiguous provisions in the contract they need not be construed as repugnant to definite and specific provisions which support the conclusion of the court. There is nothing in the surroundings nor in the attitude or conduct of the parties which would prevent that construction. On the contrary, all actions of the parties support that construction. The court took the evidence of the plaintiff showing the agreement which the parties reached when they figured the profits and losses at the end of each of the first two years. That was their interpretation of the contract—an interpretation which should weigh with the court when a contract *is* ambiguous. While we hold that the contract as a whole is not ambiguous that interpretation would serve to give coherence to the provisions which are ambiguous and harmonize them with its manifest purpose. We

note, too, that the evidence of plaintiff in that regard is not disputed, the defendant declined to testify. Where the evidence in such a case is undisputed there is nothing to submit to the jury. The court in interpreting the contract could consider the undisputed evidence throwing light upon its terms. [Brannock v. Elmore, 114 Mo. 1. c. 64; 13 C. J. 786-7; Farm & Dairy Co. v. Prindle, 249 Mo. 607; Meissner v. Railway Equipment Co., 211 Mo. 1. c. 133; Haseltine v. Farmers' Mut. Fire Ins. Co., 263 S. W. 1. c. 813.]

II. Appellant makes the point that the contract should be construed most strongly against the plaintiff because he wrote it. Plaintiff was asked on cross-examination who drew the contract. He said no lawyer drew it. When asked who typewrote it he said a girl in Jefferson City.

Then this: "Who dictated it? A. It was not dictated. Mr. Gillioz and I wrote it in his office."

"Q. You wrote it in what? A. In pencil and on paper.

"Q. This whole contract, this whole thing was written in pencil? A. The whole thing in pencil, yes sir."

The plaintiff then said that he kept it in his pocket for a while and studied over it and then took it to his office in Jefferson City and had it typewritten. It is not contended that the plaintiff dictated or suggested the terms of the contract. They were agreed upon between the plaintiff and the defendant and plaintiff simply reduced it to writing. It is not contended that it was not written just as they agreed upon it. The plaintiff's statement in relation to that stands uncontradicted. The fact that he had possession of the penciled copy upon which they had agreed does not make it his contract any more than the defendant's contract. If there had been any variation from that agreement it was for the defendant to point it out and he failed to testify. There is nothing in this situation to justify a contention that this contract was conceived or formulated by the plaintiff.

The judgment is affirmed. All concur.