AUTO OWNERS MUTUAL INSURANCE CO., Plaintiff–Respondent,

v.

Darold WIENERS, Sr., and Zella May Wieners, Defendants–Appellants,

and

Edward Black and Mary Black, Defendants.

AUTO OWNERS MUTUAL INSURANCE CO., Plaintiff–Respondent,

v.

Darold WIENERS, Sr., and Zella May Wieners, Defendants,

and

Edward Black and Mary Black, Defendants–Appellants.

Nos. 15925, 15944.

Missouri Court of Appeals, Southern District, Division Two.

April 30, 1990.

Motion for Rehearing or to Transfer to Supreme Court Denied May 22, 1990.

Application to Transfer Denied July 31, 1990.

Craig S. Johnson, Stockard, Andereck, Hauck, Sharp and Evans, Jefferson City, for plaintiff-respondent.

James D. Sickal, Waynesville, for Wieners.

William C. Morgan, Waynesville, for Blacks.

MAUS, Judge.

Plaintiff, Auto Owners Mutual Insurance Co. (Auto Owners), issued its Special Multi–Peril Policy to Edward Black and Mary Black. (Blacks). That policy included Section II Liability Coverage for their liability arising out of the ownership, maintenance or use of the insured premises and "all operations necessary or incident to the business of the named insured conducted at or from such premises." Florence Wieners died as the result of a fireworks conflagration on the described premises. In a petition to recover for her death, defendants Darold Wieners, Sr., and Zella May Wieners, his wife, (Wieners), alleged the Blacks were legally liable for their daughter's wrongful death. In this declaratory judgment action, Auto Owners alleged that Florence Wieners was an employee of the defendants within the meaning of an exclusion in the provisions of the liability coverage of said policy. On that basis, Auto Owners sought a judgment declaring the policy provided no coverage for the death of Florence Wieners and that Auto Owners was not obligated to defend the wrongful death action. In accordance with a jury verdict, the trial court entered judgment for the plaintiff. The Wieners and the Blacks (appellants) have appealed. Their appeals have been consolidated for consideration and disposition. They have filed a joint brief.

Edward Black and Mary Black were the only witnesses at trial. The basic facts are few. Starting in September 1985, the Blacks owned and operated a business in a newly-constructed building on Missouri Highway 7 near Interstate Highway 44. In that business, the Blacks sold gasoline and related automotive products, groceries, and package liquor. On week days the business was open from 6 a.m. until 10 p.m.; on Sunday from 8 a.m. to 10 p.m. The business was operated in a 60 feet room on the west end of a concrete block building 40 by 80 feet. Two 20 by 20 feet rooms were located on the east end. The southern 20 by 20 feet room contained restrooms and showers. The northern 20 by 20 feet room was roughed in for use as a laundromat. The Blacks lived in the immediate vicinity of the business. They took turns working in shifts and had hired no additional help.

In June 1986, they decided to sell fireworks. They obtained a fireworks permit for the period June 21 to July 10, 1986. Edward Black picked up the fireworks at a wholesaler near Springfield. The first purchase was placed in stock with the other merchandise. As Edward Black put it, "I stuck them on the shelf and begun [sic] to sell them." However, a fireworks inspector told the Blacks the fireworks had to be 50 feet from the gasoline pumps. They were moved to and were to be sold from the separate laundromat room on the east end of the building. It was not practical for the person running the usual business to sell fireworks from that room.

The testimony of the Blacks concerning the employment of someone to assist in the sale of fireworks was, to some extent, self-contradictory. The testimony of Mary Black on direct examination was essentially to the following effect. She and her husband discussed having their 12–year–old son, Doug, handle the fireworks business. But, because of the location of that business, she and Edward decided to hire someone to help. Edward left the hiring up to her. Mary planned on hiring two people to work successive six-hour shifts, from 10 a.m. to 4 p.m., from 4 p.m. to 10 p.m. She talked with Christy Bush. She agreed to pay her $3 per hour. She talked to Jennifer Wieners, a sister of the deceased. Jennifer already had a job. She then had two telephone conversations with Florence Wieners. She assumed she told Florence it would be a three-week job. Florence did not want the work to interfere with Church on Sunday or Wednesday night. Mary Black did not discuss with Florence the rate of pay, as that topic did not come up.

It was the position of the defendants that Florence had not been hired but was at the

premises to try out. Alternatively, if hired, her job was to babysit with Doug. Mary Black's testimony on cross-examination, primarily in response to leading questions, included the following. The fireworks business was for Doug. But, he needed someone to make change. Florence Wieners was coming to the business to see if she could handle the job. She did not intend to hire Florence until she saw that Florence could handle the job. Mary Black said Florence was properly described as a prospective employee.

On re-direct, Mary Black acknowledged that she knew Florence was to be there at 4 p.m. Florence was providing a service in the operation of the business. She would have paid Florence, even though she hadn't hired her.

Edward Black testified that it was his decision to sell fireworks. He and his wife thought Doug needed help. He and Mary decided to get help and Mary had authority to do so. Mary got Christy and Florence to work. Christy and Florence were there to sell fireworks "[o]r look after Doug, whichever way you want to phrase it."

The appellants base more than one of their arguments upon the acceptance of the testimony of Mary Black and Edward Black elicited upon cross-examination. It is appropriate at this point to observe that the testimony of the Blacks is to be considered in accordance with the following rule.

"When a party calls a witness who comes within the adverse witness rule, the party is bound by the testimony of such witness adduced on direct examination if the testimony is uncontradicted or is the only evidence on the subject; however, testimony adduced on cross-examination of an adverse witness is not binding on the calling party." *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 879 (Mo.App.1985).

Also see *Hosmer v. Hosmer*, 611 S.W.2d 32 (Mo.App.1980).

On the tragic day of June 21, 1986, Edward's daughter by a prior marriage and her son Tab were visiting the Blacks. Tab's age is not shown. Christy Bush came to the fireworks business at approximately 10 a.m. Mary instructed her on her duties. Florence came at approximately 4 p.m. Mary Black went with Florence to the fireworks business room. She reconciled the sales slips and cash register tape for the period that Christy had worked. She instructed Florence on how to keep the sales slips and cash register tape.

The whereabouts of Doug during the day of the tragedy are not clear. At one time when Christy was working, Doug went to the bank with his father. The accident occurred about 5 p.m. At that time, Mary Black was at her home. The record, by inference, establishes that Edward Black was in the room where the usual business was conducted. The record does not show where Doug and Tab were at that time.

The provisions of Section II Liability Coverage directly applicable read as follows.

"I. BODILY INJURY LIABILITY PROPERTY DAMAGE LIABILITY

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay by reason of ...

the ownership, maintenance or use of the insured premises. including the ways immediately adjoining on land and all operations necessary or incidental to the business of the named insured conducted at or from such premises ...

Exclusions

This insurance does not apply

\*      \*      \*      \*      \*      \*

(g) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured...."

The appellants' basic point is that the trial court erred in giving the verdict directing instruction offered by Auto Owners. That instruction reads:

"INSTRUCTION NO. 5

Your verdict must be for plaintiff Auto Owners Mutual Insurance Company if you believe:

First, at the time of her death, Florence Wieners was an employee of defendants Edward and Mary Black; and Second, the death of Florence Wieners was an event arising out of and in the course of her employment with defendants Edward and Mary Black.

As used in this Instruction, the term 'employee' means a person in the service of an employer under any contract of hire, express or implied, oral or written.

The death of Florence Wieners was an event 'arising out of her employment', as that phrase is used in this Instruction, if it occurred within the period of employment at a place where she could reasonably be expected to be in fulfilling the duties of her employment, or engaged in the performance of some task incidental to that employment.

The death of Florence Wieners was an event 'in the course of her employment', as that phrase is used in this Instruction, if there is a causal connection between the conditions under which the work is required to be performed and the resulting death."

█ The appellants' first contention under that point is that the instruction submits an improper definition of the term "employee". They state the definition given is that applicable in determining workers' compensation coverage. They argue that this liberal definition reflects the policy of the law to extend the benefits of workers' compensation to the largest possible number of workers. However, they argue, the exclusion should be construed against the company and the term "employee" construed to exclude only a narrowly-defined class. They rely upon the definition in *Daub v. Maryland Casualty Co.*, 148 S.W.2d 58 (Mo.App.1941), cert. quashed, *State ex rel. Maryland Casualty Co. v. Hughes*, 349 Mo. 1142, 164 S.W.2d 274 (1942). That definition is contained in the following:

"The word 'employee,' which is the correlative of employer, is commonly used as signifying continuous service, or as designating a person who gives his whole time and services to another for a finan-cial consideration, or as designating a person who performs services for another for a financial consideration, exclusive of casual employment, or a person in constant and continuous service, or a person having some permanent employment or position, or a person who renders regular and continued services, not limited to a particular transaction, or a person having a fixed tenure or position. The words, employed and employee, as used in insurance policies, generally denote regular employment, as distinguished from occasional, incidental, or casual employment. It is in this sense, we think, that the word employed is used in the policy with which we are here concerned. The obvious purpose of the restrictive words 'not employed' is to exclude from coverage any person regularly employed, or, in other words, any regular employee, not a mere occasional, incidental, or casual employee." *Daub*, 148 S.W.2d at 60. (Authorities omitted).

They argue the definition submitted in this case is improper because selling fireworks was not a part of the Blacks' regular business, the work was temporary, and the terms of employment under which Florence was rendering service were so vague there was no contract of employment.

The term "employee" is used as an element in many legal relationships. For example, it is used in the concept of master-servant, workers' compensation, the borrowed servant doctrine, and the independent contractor doctrine. The emphasis in the definition of the term may vary according to the factor or factors critical to the relationship being considered. "The word 'employee' may and frequently does have many different meanings in the multitude of varying connections in which it is used." *Ward v. Curry*, 341 S.W.2d 830, 835–836 (Mo.1960). When the term is considered in respect to any one legal concept, it may very well have an unambiguous meaning.

In this case, the term is used in expressing an exclusion to liability insurance coverage. In *Daub*, relied upon by the appellants,

"the St. Louis Court of Appeals held that the words 'not employed' in the policy were ambiguous, so as to leave the policy open to construction; and that the obvious purpose of such words was to exclude persons *regularly* employed, not mere occasional, incidental or casual employees. It was the view of the court that a boy hired to do odd chores about a house or yard on three different and irregular occasions was not 'employed' and, therefore, not excluded." *Turnage v. State Farmers Mut. Tornado Ins. Co. of Mo.*, 388 S.W.2d 342, 345 (Mo.App. 1965). (Emphasis in original.)

Subsequent cases construing the term "employee" as used in an exclusion to liability coverage have consistently distinguished *Daub* and limited the authority of that case to its particular facts. *State Farm Mut. Automobile Ins. Co. v. Brooks*, 136 F.2d 807 (8th Cir.1943), cert. denied, 320 U.S. 768, 64 S.Ct. 80, 88 L.Ed. 459; *Simpson v. American Automobile Insurance Company*, 327 S.W.2d 519 (Mo.App.1959); *Ward v. Curry*, supra; *Farm Bureau Mut. Ins. Co. v. Farmers Mut. Auto. Ins. Co.*, 360 S.W.2d 325 (Mo.App.1962); *Turnage v. State Farmers Mut. Tornado Ins. Co. of Mo.*, supra; *Farmers and Merchants Ins. Co. v. Smith*, 742 S.W.2d 217 (Mo.App. 1987).

For example, in *State Farm Mut. Automobile Ins. Co. v. Brooks*, supra, the court held that such a provision excluded a boy hired by a fuel dealer to help in hauling wood for an estimated period of one week. In so holding, the court stated the following was the law of Missouri.

"It is recognized that generally the insured and all the persons who are working for him for wages in his business are excluded from the insurance. A cardinal object of the insurance is to distinguish between the public and those engaged in the business, and to include the former and to exclude the latter." 136 F.2d at 811.

That definition and object of the exclusion has been adopted in the following cases.

In *Ward v. Curry*, supra, the court held a similar provision excluded a statutory employee as defined in the workers' compensation law. In *Farm Bureau Mut. Ins. Co. v. Farmers Mut. Auto. Ins. Co.*, supra, the provision was held to exclude a boy hired by a farmer to help in haying for approximately one week. In *Turnage v. State Farmers Mut. Tornado Ins. Co. of Mo.*, supra, the court reached the same conclusion on a similar factual situation. Also see *Farmers and Merchants Ins. Co. v. Smith*, supra.

Contrary to the appellants' contention, "[i]n Missouri, the courts consistently turn to the Workmen's Compensation Act in determining the meaning of the word 'employee' as used in exclusion clauses of liability insurance policies, involving questions fairly analogous to that here presented." *Ward v. Curry*, supra at 836. Also see *Turnage v. State Farmers Mut. Tornado Ins. Co. of Mo.*, supra. The basic definition from that Act is:

"The word **'employee'** as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officers of corporations." § 287.020.1.

That definition substantially embodies the essential elements of the common law definition.

"The Restatement of Agency, embodying common-law principles, provides a guideline to analyze the employment issue.... The Restatement defines a servant as 'a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.' Restatement (Second) of Agency, § 220(1)." *Vinyard v. Missouri Pac. R.R.*, 632 S.W.2d 272, 274–275 (Mo.App.1982). (Citation omitted).

Also see *Knob Noster v. Casualty Indem. Exchange*, 769 S.W.2d 842 (Mo.App.1989); *Miller v. Hirschbach Motor Lines, Inc.*, 714 S.W.2d 652 (Mo.App.1986).

As a result of the cases such as those cited, the term "employee" as used in a

liability coverage exclusion has come to have a settled meaning. Indeed, the term "employee" as so used is held to be unambiguous. *Ward v. Curry,* supra; *Brock v. Firemens Fund of America Ins. Co.,* 637 S.W.2d 824 (Mo.App.1982). "To hold that the word 'employee' as used in American's policy is ambiguous and susceptible of more than one interpretation would be a distortion of its meaning." *Simpson v. American Automobile Insurance Company,* supra, 327 S.W.2d at 526. Also see *Campbell v. American Farmers Mutual Insurance Co.,* 238 F.2d 284 (8th Cir.1956). Under the facts of and the issue raised in this case, Instruction No. 5 did not submit an improper definition of the term "employee" as used in the exclusion.

Under the same point, the appellants contend the trial court should have found the term "employee" to be ambiguous and "instructed the jury as to the proper rules of construction to apply in cases involving ambiguity in exclusionary clauses in liability insurance contracts." It has been generally accepted that "[t]he interpretation of the meaning of the insurance policy is a question of law. *Commerce Trust Company v. Howard,* 429 S.W.2d 702, 705–706 (Mo. 1968)." *Moore v. Commercial Union Ins. Co.,* 754 S.W.2d 16, 18 (Mo.App.1988).

"The court did not call upon the jury to make findings of fact but rather submitted the question of law of whether or not there was coverage. It requires no citation of authority to hold that the proper function of the jury is the determination of facts and the function of the court is to determine questions of law. It was error for the court to submit the issue of coverage to the jury." *Opies Milk Haulers v. Twin City Fire Ins.,* 755 S.W.2d 300, 302 (Mo.App.1988).

Also see *Ross v. St. Louis Dairy Co.,* 339 Mo. 982, 98 S.W.2d 717 (1936); 44 Am. Jur.2d, Insurance, § 2034.

The appellants apparently base their contention upon the following proposition.

"Where the language of the contract on its face is not clear or is ambiguous, and resort to extrinsic evidence is necessary, if such evidence be conflicting, or, if not conflicting, different conclusions might reasonably be drawn therefrom, the construction of the agreement is for the jury under proper instructions from the Court. But where a contract is clear and unambiguous on its face, or where there is no real conflict of evidence upon any of the essential facts properly to be considered in construing the contract, and the true meaning of the words used is made clear by such evidence, it becomes the duty of the Court, and not the jury, to construe it. *Keyes Farm & Dairy Co. v. Prindle,* 249 Mo. 600, 155 S.W. 391; *McFarland v. Gillioz,* 327 Mo. 690, 37 S.W.2d 911; *Ewing v. Von Nieda,* 8 Cir., 76 F.2d 177; *Geoghegan Sons & Co. v. Arbuckle Bros.,* 139 Va. 92, 123 S.E. 387, 36 A.L.R. 399; *Straus v. Kazemekas,* 100 Conn. 581, 124 A. 234." *National Corporation v. Allan,* 280 S.W.2d 428, 432 (Mo.App.1955).

Cases relying upon this proposition have held that a trial court should submit to the jury the resolution of a dispute of what the parties meant by an ambiguous phrase in a written contract. *Boswell v. Steel Haulers, Inc.,* 670 S.W.2d 906 (Mo.App.1984); *Busch & Latta Painting v. State Highway Com'n,* 597 S.W.2d 189 (Mo.App.1980). It was further said that an instruction submitting such an issue should be an adaptation of MAI 26.06 accompanied by an instruction of factors to be considered in construing that written contract. *Busch & Latta Painting,* supra. However, it has subsequently been held that under the 1981 Revision of MAI 26.06 an "additional factors" instruction is not required. *Edgewater Health Care v. Health Systems,* 752 S.W.2d 860 (Mo.App.1988).

The procedure suggested by such cases is generally not appropriate to be followed in the construction of an insurance policy. The words used in or terms of an insurance policy are not in dispute. A protocol of long standing has been succinctly stated. "The law applicable is 'that the terms of a contract, if it be ambiguous, are matters of fact to be determined in the same manner as other facts; by the jury, ... while the construction of the contract and its legal effect are questions of law for the court.' "

*Mutual Ben. Health & Acc. Ass'n v. Hobbs,* 186 F.2d 321, 323 (8th Cir.1951).

This is the procedure approved by the Missouri authorities cited in the proposition quoted from *National Corporation v. Allan, supra.*

> "There is no real conflict of evidence upon any of the essential facts necessary to be considered in construing the contract involved, and in such circumstances, though the contract be conceded to be in itself ambiguous, its construction is nevertheless for the court, and not the jury." *Keyes Farm & Dairy Co. v. Prindle,* 249 Mo. 600, 607, 155 S.W. 391, 393 (1913).

> "The trial court decided that the contract was ambiguous and permitted parol evidence to show the surroundings and the interpretation of the contract by the parties to it. After that evidence was in, the court construed the contract as interpreted by the plaintiff and instructed the jury accordingly." *McFarland v. Gillioz,* 327 Mo. 690, 695, 37 S.W.2d 911, 914 (1931).

The caption of the suggested instruction is: "26.06 [1981 Revision] Verdict Directing— Breach of Bilateral Contract—*Terms* and Breach *in Issue*". (Emphasis added.)

■ In the construction of an insurance policy, it is the meaning of written "terms" that is in issue. By its own language, the *National Corporation* proposition forbids the submission of the construction of an agreement to a jury unless a written contract *"is ambiguous, and resort to extrinsic evidence is necessary,* if such evidence be conflicting, or, if not conflicting, different conclusions might reasonably be drawn therefrom . . . ." 280 S.W.2d at 432. (Emphasis added.)

A recent decision succinctly limited the submission of a contract dispute to a jury by the following language.

> "In either case, the trial court must first attempt a construction based on all the circumstances, evidence, and rules of construction, and if that attempt does not result in a resolution of the ambiguity or if the resolution of the ambiguity requires weighing of evidence, then the

issue is for the jury." *Vandever v. Junior College Dist. of Kansas City,* 708 S.W.2d 711, 717 (Mo.App.1986).

This seems to be a restatement of a limitation upon the function of a jury in construing a written contract clearly set forth in *Busch & Latta Painting, supra.*

> "Thus, even if the contract be found to be ambiguous, the court must still declare the meaning of the contract unless the surrounding circumstances or other extrinsic evidence admitted on the ambiguity question raise *issues of fact* for the jury to resolve." 597 S.W.2d at 198. (Emphasis added.)

This limitation says that it is for the jury to resolve only those issues of fact and for the court to construe the written contract upon the basis of those *facts* found by the jury. The case does not say that if after hearing the extrinsic evidence the court finds it impossible to construe the contract, it should pass that function to the speculation of the jury. The inappropriateness of submitting the construction of a contract to a jury upon an adaptation of MAI 26.06 is found in that instruction. It is obvious that one of the parties did not agree to the proposition submitted in paragraph First.

■ If the construction of a written contract hinges upon an issue of fact raised by the extrinsic evidence, an appropriate instruction should submit alternate constructions dependent upon the resolution of that factual issue. The Declaratory Judgment Rules provide:

> "When a proceeding under Rule 87 involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." Rule 87.06.

This contention of the appellants need not be further considered.

Whether or not a written contract is ambiguous, is to be determined from the contract language and is for the court. *Edgewater Health Care v. Health Systems,* supra; *Vandever v. Junior College Dist. of Kansas City,* supra; *Boswell v. Steel*

*Haulers, Inc.,* supra. It is established that as used in an exclusion to liability coverage the term "employee" is not ambiguous. *Ward v. Curry,* supra; *Brock v. Firemens Fund of America Ins. Co.,* supra. Under all the authorities, the construction of the policy was for the court. *Campbell v. American Farmers Mutual Insurance Co.,* supra. The construction of the term "employee" adopted by the court and submitted in Instruction No. 5, was not erroneous. The appellants' latter contention is denied.

■ By a separate point, the appellants contend the verdict-directing instruction was erroneous because the issues of whether or not Florence was an employee of the Blacks and whether or not her death arose out of and in the course of her employment were questions of law that should have been decided by the court. In support of this point, the appellants cite cases such as *Bybee v. Ozark Airlines,* 706 S.W.2d 570 (Mo.App.1986), and *Saxton v. St. Louis Stair Company,* 410 S.W.2d 369 (Mo.App. 1966). Statements from such cases supporting the appellants' point are applicable when the facts are not disputed. In this case, there were but two witnesses. However, their testimony was not entirely consistent. Under the standard summarized in *Hurlock,* supra, the resolutions of those conflicts and inferences to be drawn from the testimony were for the jury within the framework of the submission of the ultimate issues. Cf. *American Family Mut. Ins. Co. v. Flaharty,* 710 S.W.2d 5 (Mo. App.1986). The trial court did not err in permitting it to do so.

■ By separate point, the appellants contend that Instruction No. 5 was erroneous because it did not require the jury to find that Florence Wieners' employment was related to the Blacks' gas, grocery and package store business as opposed to her employment as a babysitter for Doug Black. When asked if she considered Florence a babysitter, Mary Black answered, "Not, well, twelve year old is a little bit big for a babysitter." Whether Florence was employed to directly sell fireworks or to assist Doug in selling fireworks, her ser-

vice was in connection with the gas, grocery and package store business of the Blacks. The instruction was not erroneous for failing to require the jury to find a fact not in issue. *Johnson v. Pacific Intermountain Exp. Co.,* 662 S.W.2d 237 (Mo. banc 1983), cert. denied, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984).

■ The appellants also contend the trial court erred in not giving Instruction "B", which they tendered. That instruction read:

## "INSTRUCTION NO. B

As used in these instructions, the term 'employee' means a person in the service of an employer under any contract of hire, express or implied, oral or written.

The word 'employee' which is the correlative of employer, is commonly used as signifying continuous service, or as designating a person who gives his whole time and services to another for a financial consideration, or as designating a person who performs services for another for a financial consideration, exclusive of casual employment, or a person in constant and continuous service, or a person who renders regular and continued services, not limited to a particular transaction, or a person having fixed tenure or position.

The words employed and employee, as used in insurance policies, generally denote regular employment, as distinguished from occasional, incidental, or casual employment.

You must interpret Plaintiff's policy as the ordinary person in the shoes of the insured would understand it."

An instruction not in the Missouri Approved Instructions must follow the substantive law and be readily understood. *Bayne v. Jenkins,* 593 S.W.2d 519 (Mo. banc 1980). It must be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(e). *Kraus v. Kraus,* 693 S.W.2d 869 (Mo.App. 1985); *Dunn v. St. Louis–San Francisco Ry. Co.,* 621 S.W.2d 245 (Mo. banc 1981),

cert. denied, 454 U.S. 1145, 102 S.Ct. 1007, 71 L.Ed.2d 298 (1982). Instruction B does not meet those standards and was properly refused.

■ The appellants' next point is that the trial court erred in denying their motion for a directed verdict at the close of all the evidence or, in the alternative, denying them a new trial, because the verdict was against the weight of the evidence and was not supported by substantial and competent evidence. In argument under this point, the appellants emphasize the testimony of Mary Black that she had not hired Florence Wieners and that Florence Wieners was there to try out or to see if she could handle the job. They insist the relationship was vague, indefinite, uncertain and unenforceable.

This point and the argument under this point ignore the facts established by a consideration of the whole record. Those facts include the following. Mary Black and Edward Black decided to hire help in the operation of the fireworks business. Mary Black contacted Christy Bush and Florence Wieners. After being instructed by Mary Black, Christy Bush worked the first shift. Florence Wieners arrived at the business at approximately 4 p.m., in accordance with instructions from Mary Black. Mary Black then showed Florence Wieners how to perform her work in selling fireworks. Florence was performing that work at the time of the fireworks conflagration, which appellants admitted caused her death.

The testimony upon which appellants rely is, in the main, an attempt by Mary Black on cross-examination to explain away those facts and her own admissions. Specific examples of such admissions are the following.

"MR. JOHNSON: You and Ed decided to hire some help because of the location of the fireworks and they weren't in proximity to the store where you had to operate the store, isn't that correct?

A. Yes.

Q. And that was a joint decision that you and he made, but he left the decision as to whom to find up to you?

A. Yes.

\* \* \* \* \* \*

Q. But sometime or another you told her to come in at 4:00?

A. Approximately 4:00 o'clock, I believe so.

\* \* \* \* \* \*

MR. JOHNSON: Florence was helping you perform the services necessary to run your business, wasn't she?

A. She was helping my son in the back with the fireworks, which pertains to the business.

Q. So your answer is yes, she was helping with your business?

\* \* \* \* \* \*

A. Yes."

Edward Black was asked, "Mary went ahead and got Florence and Christy to work?" Without equivocation, he answered, "Yeah".

"Appellate determination of whether [Auto Owners] made a submissible case against [appellants] is governed by the obtaining principle that the evidence must be considered in the light most favorable to [Auto Owners], giving [Auto Owners] the benefit of all inferences reasonably drawn therefrom...." *Hurlock v. Park Lane Medical Center, Inc.*, supra, 709 S.W.2d at 879.

Measured by that standard, it is apparent there was substantial evidence to support the verdict. It was for the jury to resolve the conflicts in the evidence and to weigh the evidence.

"In reviewing a jury verdict the Court of Appeals does not determine the credibility of the witnesses, resolve conflicts of testimony or weigh the evidence; these tasks are properly those of the jury.... Whether or not the verdict is against the weight of the evidence is within the exclusive province of the trial court alone and is not a determination for the Court of Appeals." *Wilkes v. Group Under-*

*writers Mut.*, 715 S.W.2d 308, 310 (Mo. App.1986). (Citation omitted). The point is denied.

■ The appellants' next point is the trial court erred in failing to instruct the jury on the question of agency between Edward Black and Mary Black. The essence of appellants' argument under that point is bluntly stated. "Respondent offered no evidence of any agency relationship between Edward Black and Mary Black, either actual, express, implied or apparent."

Edward Black and Mary Black each testified they operated the business as a partnership. Mary Black testified the decision to hire help was a joint decision, but Edward left up to her whom to hire. Edward Black testified they discussed the need for help in the fireworks business and if Mary wanted to go ahead, that was all right with him. He added that Mary had the right to do anything she wanted to in the business. This point is refuted by the record and is denied. *Johnson v. Pacific Intermountain Exp. Co.*, supra.

■ In a related point, the appellants contend the form of verdict was erroneous because it did not give the jury an alternative to find Florence Wieners was an employee of Mary Black but not an employee of Edward Black. An extended discussion of the point is not required. As noted, the undisputed evidence established that Edward Black was bound by the actions of Mary Black in employing help in the fireworks business. Her agency was not an issue. The trial court was not obligated to provide a form of verdict addressing a contingency not in issue. Cf. *Campbell v. Kelley*, 719 S.W.2d 769 (Mo. banc 1986). This last point is denied and the judgment is affirmed.

FLANIGAN, P.J., and HOGAN, C.J., concur.