BICKERTON, INC., Appellant,

v.

AMERICAN STATES INSURANCE CO.,

Albrecht Art Museum, Respondents.

No. WD 48422.

Missouri Court of Appeals,
Western District.

March 7, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 1995.

Application to Transfer Denied
June 20, 1995.

Ronald M. Sokol, P.C., St. Joseph, for appellant.

Daniel T. Defeo, James P. Barton, Jr., Myerson, Monsees & Morrow, Kansas City, for respondent.

Before ULRICH, P.J., and KENNEDY and BERREY, JJ.

ULRICH, Presiding Judge.

Bickerton, Inc., sued American States Insurance Company (American States), in contract, alleging entitlement to recovery for water damage resulting to a building it owned pursuant to an insurance policy issued by American States to the Albrecht Art Museum (Museum). Bickerton, Inc., also sued Museum in tort, for allegedly causing the damage sustained to the building. The insurance policy was issued to Museum by American States during Museum's occupancy of the building as a requirement imposed by agreement between Bickerton and Museum. Bickerton appeals from the judgment entered in favor of American States following trial without a jury and from summary judgment entered in favor of Museum.

The judgment in favor of American States is affirmed. The summary judgment entered in favor of Museum is affirmed.

On December 30, 1989, the Townsend and Wall Building (Building), a multi-story building located in downtown St. Joseph, Missouri, suffered severe water damage due to breakage of a fire sprinkler pipe fitting on the fifth floor which went undetected for several hours, allowing water to course through the building and into the basement. Prior to the damages to the building being found, Bickerton, corporate owner of the building, was unaware of a defective sprinkler alarm system.

The sprinkler alarm system installed on the premises of the Building was a dry fire extinguisher system designed to utilize air pressure in the sprinkler lines to hold back water from entering the lines at the point water entered the building. An integral alarm system was to automatically dial the fire department; Andrew S. Glaze, who wholly owned Bickerton; the alarm company; and others in the event air pressure in the system dropped below a set level.

Unknown to Bickerton, at the time of the loss, a portion of the telephone wire was missing above the entry door to the display window immediately east of the dialer box. The absence of the missing portion of telephone wire prevented the alarm device from alerting designated persons through the telephone system of a defective sprinkler system. When tested by the alarm company when the system was installed and after the casualty, the alarm device functioned normally. If the alarm had worked as intended, messages would have been sent early enough to allow someone time to respond and turn off the water prior to its entry into the system.

In early 1989, the building stood empty, was self-insured, and was being actively offered for sale. The building was kept locked; and a building maintainer, Kenneth Arn, was employed by Bickerton to make regular inspections of the Building. Mr. Arn made routine written reports of his inspections. The only others entering the building were prospective purchasers, who were given escorted tours; alarm company workers; sprinkler company workers; roofers; and Mr. Arn's family, who seasonally watched fireworks from the roof.

Museum is a non-profit art museum located in St. Joseph. Each year its primary fund raiser is the Pot-of-Gold Auction, which is a gala dinner followed by an auction of donated items and services. In January 1989, Andrew S. Glaze, President and sole stockholder of Bickerton, was approached by Mr. Robert Thedinger, the event chairman, on behalf of the Museum with a request that the Museum be allowed to use the Building as the location for the fund raiser on May 6, 1989. Use of the building was to be donated to Museum free of any charges or rent and would be extensively redecorated in order to get the Building ready for the event. After this meeting, Mr. Glaze discussed the use of the building with his attorney who prepared a proposed Building Use Agreement that was submitted to Museum.

On or about January 31, 1989, Mr. Glaze spoke to Bill McMurray, an agent for the insurance agency representing the Museum, and advised him to bind liability coverage on the Building. Mr. McMurray bound $500,-000 in commercial general liability coverage on the Museum's policy through American States Insurance Company as of February 1, 1989.

Cliff Kirwan and Paul Chambers were in charge of designing, constructing, and placing decorations advertising the auction in the window on the north side of the building. They began this work in late February or early March 1989, although the signed Building Use Agreement provided for occupancy and use of the building beginning March 1, 1989, through May 20, 1989, with insurance coverage to begin March 1, 1989, as well. The alarm dialer box and the telephone line

were located in the display window, which was on the north side of the building immediately to the east of the main door to the building. The decorating was completed around the second week of March 1989. Neither Mr. Kirwin nor Mr. Chambers nor anyone who assisted them in decorating the window was given a key to the building. Only the alarm serviceman and the building custodian were known to have been in the window during the time the museum occupied the building except for persons affiliated with the museum.

On February 16, 1989, Mr. Thedinger, chairman of the auction; Buzz Burnham, the Museum's agent; and insurance agents met to discuss fire insurance on the building during the Museum's tenancy. Mr. Thedinger agreed to "a fire legal liability basis," which was a cheaper way to insure the building against fire than to insure with an "all-risk" insurance.

After the auction, Mr. Kirwan and Mr. Chambers removed most of the decorations from the window. After the May 20 occupancy termination date, items belonging to the Museum were still in the building.

After the Museum vacated the building, on or before May 20, 1989, the building remained vacant until Bickerton allowed the Harris Addition Neighborhood Association to use the ground floor for an Apple Pie Festival. A Building Use Agreement dated August 30, 1989, was prepared for that use, which provided for occupancy for a few days. The windows were decorated for the "Apple Pie St. Joseph Style" event with items such as an old-fashioned table, benches and chairs which gave the appearance of a kitchen setting. Posters were also placed in the display area. The agreement with the neighborhood group did not contain an insurance requirement regarding fire or sprinkler coverage.

After discovery of the casualty on or about December 30, 1989, Mr. Glaze contacted the alarm company to determine why the alarm message was not received by him or the fire department. Mr. Hanke from the alarm company and Mr. Arn tested the alarm system, which was found to be working properly. They discovered that the telephone wire

connecting telephone service to the alarm dialer was missing. This wire had been installed on each side of the sliding door entrance to the display window. Both the telephone wire and the dialer box were painted the distinctive red color used by Mr. Kirwan and Mr. Chambers. Furthermore, a paint track in the distinctive color which had formed under the wire when the wall was painted was found to extend into the space which had been occupied by the missing wire. Painted areas of the wall disclosed where cable staples had been removed where the missing wire had been located. After a new section of wire was spliced to replace the missing segment, the system functioned properly.

After Mr. Glaze, in behalf of Bickerton, made a formal claim, American States surveyed the damage to the building and gathered information concerning the extent and cost of the damage and the value of the building. On May 18, 1990, the insurance carrier denied the claim on the premise that the Museum was not responsible for causing the damage to the Building. As a result of that denial, Bickerton filed suit against the Museum and American States.

American States claimed there was no coverage for the Building under the policy as endorsed and also that the policy endorsements were cancelled by Museum effective May 20, 1989. The insurer also asserted that Bickerton was not covered, even if the certificates of insurance provided Bickerton by American States indicated coverage of insurance extended to January 20, 1990, because Museum's tenancy of the building had expired and the building had been vacant for more than sixty days.

During the pendency of the action, American States filed several Motions for Summary Judgment. American States also moved for severance. The trial court ordered severance. Bickerton filed a cross-motion for Summary Judgment. The trial court took the motions with the trial of the count against American States in order to hear all of the evidence.

The trial was bifurcated with the judge to make the initial determination of coverage without a jury. The court found the policy was unambiguous and that it did not extend coverage to the casualty due to the cancellation of the policy on May 20, 1989. The trial court also sustained the Museum's motion for summary judgment finding that Bickerton produced no evidence that the Museum caused the casualty.

The trial court determined that summary judgment in favor of Museum and the judgment in favor of American States were final for purposes of appeal. From these judgments, Bickerton appeals.

The judgments of the trial court are affirmed.

I

As point one on appeal, Bickerton alleges error in the granting of summary judgment to Museum.

When reviewing summary judgments appellate courts view the record in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the evidence. *Martin v. Washington,* 848 S.W.2d 487, 489 (Mo. banc 1993). Appellate courts review the judgment "on the basis of the record submitted and the law, and . . . need not defer to the trial court's order granting summary judgment." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

Summary judgment requires that no genuine issue of material fact exists. Rule 74.04(c)(1). Although summary judgment is "appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits filed in support of the motion, demonstrate that there is no genuine issue as to any material fact," *Martin v. Washington,* 848 S.W.2d at 489, summary judgment is "the undisputed right to judgment as a matter of law, not simply the absence of a fact question." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d at 380. The facts contained in affidavits filed in support of the motion or "otherwise in support of the party's motion are taken as true unless con-

tradicted by the non-moving party's response to the summary judgment motion." *D.E. Properties Corp. v. Food for Less,* 859 S.W.2d 197, 200 (Mo.App.1993).

If the record "contains competent evidence that two plausible, but contradictory, accounts of essential facts exist," *Id.,* then a genuine issue of material fact remains to be resolved. A defendant may establish the right to summary judgment

> by showing facts that negate *any one* of the claimant's elements, that the non movant has not and will not produce sufficient evidence to allow a trier of fact to find the existence of *any one* of the elements, or that there is no genuine dispute as to the existence of *each* of the facts necessary to support a properly-pleaded affirmative defense.

*Kuhn v. Budget Rent–A–Car of Missouri, Inc.,* 876 S.W.2d 668, 672 (Mo.App.1994). Such evidence must be substantial and essential facts cannot be inferred nor may they rest upon speculation or conjecture. *Courtney v. Emmons,* 702 S.W.2d 139, 141 (Mo. App.1985). Since an order granting summary judgment is not presumptively erroneous, the burden is on the appealing party to demonstrate error. *Cain v. Hershewe,* 777 S.W.2d 298, 300 (Mo.App.1989).

The elements of a negligence action are a legal duty to conform to a certain standard of conduct to protect others against unreasonable risks, breach of the duty, proximate cause, and actual damages. *Kuhn v. Budget Rent–A–Car of Missouri, Inc.,* 876 S.W.2d at 672.

Bickerton, on three different occasions, in responding to Museum's motion for summary judgment never contradicted the statements of fact asserted therein. The Museum's Statement of Uncontroverted Facts indicated that "Mr. Chambers and Mr. Kirwan in decorating the window, did not cut, pull loose or damage either a telephone wire or electrical wire inside the window area."

Bickerton never maintained that it had actual knowledge and direct first hand proof that either Mr. Kirwan or Mr. Chambers cut the telephone wire serving the automatic dialing system. Bickerton's position has been that its evidence shows that none of its employees, agents, or servants touched the telephone wire once it was placed in service and properly operating until the wire was repaired after the damage occurred. Bickerton argues, therefore, that a jury might choose to disbelieve Mr. Chambers, one of the two men who decorated the display window for the Museum, and find that no one else who had access to the window damaged the wire.

Bickerton, however, produced no facts to show that the damage occurred during the time of exclusive possession by the Museum. A number of persons other than the Museum had access to the building and the north window in 1989. Among them were Mr. Arn, Mr. Arn's family, prospective purchasers of the building, alarm company serviceman, sprinkler company workers, roofers, patrons of the auction, the Harris Addition Neighborhood Group, patrons of the "Apple Pie St. Joseph Style" fundraiser, and others, including the fire department. Simply because Bickerton has evidence to show that Bickerton's employees, agents, or servants did not touch the telephone wire does not entitle Bickerton to defeat the Museum's Motion for Summary Judgment.

Bickerton must set forth specific evidence by affidavit, depositions, answers to interrogatories, admissions on file or otherwise to contradict the showing of the movant Museum. Bickerton failed to present substantial and essential facts to do so. Since Bickerton cannot contradict the showing of the Museum, the trial court properly granted the Museum's Motion for Summary Judgment. No genuine issue of material fact existed, and Museum was entitled to judgment as a matter of law.

Point one is denied.

## II

As point two on appeal, Bickerton claims that the trial court erred in granting judgment to American States, alleging that Bickerton was directly insured for the loss under the policy issued to Museum or that the insurance policy was ambiguous, either alone

or in conjunction with the certificates of insurance and the insurance paragraph of the Building Use Agreement. Bickerton also alleged that American States was vexatious in its refusal to pay the claim.

▌ Interpretation of the meaning of an insurance policy is a question of law. *Auto Owners Mut. Ins. Co. v. Wieners,* 791 S.W.2d 751, 757 (Mo.App.1990). In resolving whether an insurance contract is ambiguous, the trial court makes the determination and not the jury. *Id.* Ambiguity exists in an insurance policy only where the policy is capable of being construed in more than one way and the construction of the policy cannot be made within the four corners of the policy itself. *Frost v. Liberty Mutual Ins. Co.,* 828 S.W.2d 915, 921 (Mo.App.1992). If the surrounding circumstances or other extrinsic evidence raises issues of fact necessary for resolution of the ambiguity, the jury determines those disputed issues of fact. The court must then apply the findings of the jury to resolve the ambiguity—either directly or by instructions to the jury. *Auto Owners Mut. Ins. Co. v. Wieners,* 791 S.W.2d at 757–58. Furthermore, if no underlying facts are in dispute, disputes arising from the interpretations and application of insurance contracts are a matter of law for the court. *Id.* at 757.

▌ Appellate review of the trial court's determination of whether the insurance policy is ambiguous is, likewise, a question of law. As a result, the standard of review is de novo. *Leggett v. Missouri State Life Ins. Co.,* 342 S.W.2d 833, 850 (Mo. banc 1960) (indicating that the appellate court should independently consider the evidence and reach its own conclusions); *Queen City Farms, Inc. v. Central Nat'l Ins. Co.,* 64 Wash.App. 838, 827 P.2d 1024 (1992).

▌ Missouri law requires the trial court, in the absence of an ambiguity in the insurance policy, to enforce insurance contracts as written, and the court must accept the written policy as the expression of the agreement between the parties thereto, giving effect to those intentions as set forth within the four corners of the policy. *Wilson v. Concordia Farmers Mut. Ins. Co.,* 479 S.W.2d 159, 162 (Mo.App.1972).

The trial court determined whether the American States policy at issue was ambiguous, reviewing the policy itself and hearing testimony from a number of witnesses. The Museum had a pre-existing policy of commercial general liability coverage with American States. The coverages required for building by the Building Use Agreement between Museum and Bickerton were procured by adding the appropriate endorsements to the Museum's existing policy.

▌ Whether Bickerton was afforded coverage under an "all risk" policy by American States is immaterial since whether Bickerton, Inc. had coverage at the time of the damage is dispositive of the issue. As can be seen from reviewing the clear and unambiguous language of Museum's American States policy of insurance issued to Museum, the policy was in effect from January 24, 1989, to January 24, 1990. The Museum had pre-existing commercial general liability and commercial property coverages to which was added fire legal liability coverage by endorsements. Likewise, Bickerton was added as an additional insured on the existing commercial general liability coverage by endorsement only during the pendency of Museum's tenancy of the building as specified by the Building Use Agreement between the parties.

The legal liability property damage coverage afforded Bickerton under the policy was terminated on May 20, 1989, the expiration date of Building Use Agreement, which afforded Museum use of the building. The procedure utilized was standard for American States when these endorsements were written to the original policy. The endorsements to the policy were added by computer from the start date of the endorsement to the termination date of the policy itself. The agent, in a second transaction, canceled the original endorsement effective the last date of the Building Use Agreement since the coverages added by these additional endorsements were only needed until May 20, 1989, rather than January 24, 1990.

Bickerton claims that since the Museum had not completely removed its property from the premises by May 20, 1989, the

duration of the insurance coverage pursuant to endorsement was modified. The intent of the parties is evinced by the Building Use Agreement which indicated that the coverages required for the building would only need to be in effect until May 20, 1989. The presence of certain items belonging to Museum on the building premises could not change the intent of American States and Museum in the insurance policy endorsement to insure the premises only through May 20, 1989.

Bickerton also complains that it was not provided with a copy of the American States policy and that it did not receive notice that the legal liability property damage coverage was terminated on May 20, 1989. American States had no legal duty to provide Bickerton with a copy of the pre-existing policy since the policy was provided to the first named insured, Museum, which was responsible for payment of the premiums. Bickerton received a certificate of insurance pursuant to the requirements in the Building Use Agreement to provide insurance on the premises. Furthermore, Bickerton did not request a copy of the policy and was well aware of the term of occupancy provided under the Building Use Agreement.

The terms of the policy with respect to the cancellation of the policy were followed. The notice of cancellation, effective May 20, 1989, conformed to the original intent and understanding of Bickerton as to the duration of the coverage. A reasonable person would assume the tenant would only pay premiums necessary to insure the building premises during the occupancy and that the insurance policy would be canceled at the conclusion of the term of occupancy unless otherwise provided for in the agreement between landlord and tenant.

Bickerton's assertion for vexatious refusal to pay is without merit. In Missouri Section 375.420, RSMo.1994, provides for the imposition of vexatious refusal to pay penalties:

In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Missouri courts have consistently held the claimant must show that the insurance company's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person before trial. *Mears v. Columbia Mut. Ins. Co.,* 855 S.W.2d 389, 394 (Mo.App.1993); *Russell v. Farmers & Merchants Ins. Co.,* 834 S.W.2d 209, 221 (Mo.App.1992).

Since Bickerton was not covered on the date of the loss, and since testimony at trial indicated that American States denied the claim on the Building because "the investigation did not reveal the Museum to be responsible in causing the claim to the Building," American States cannot be said to have acted vexatiously in denying the claim.

Point two is denied.

The judgment in favor of American States is affirmed. The summary judgment in favor of Albrecht Art Museum is affirmed.

All concur.