**FARMERS AND MERCHANTS INSURANCE COMPANY,**
Appellant,

v.

**Dan G. SMITH, Floyd Elgin Smith and Carl D. Dixon, Respondents.**

**No. WD 39130.**

Missouri Court of Appeals,
Western District.

Nov. 17, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 29, 1987.

Stephen C. Scott, Janice A. Harder, Columbia, for appellant.

Ronald J. Prenger, Jefferson City, for respondents Smith.

D. James Mariea, Fulton, for respondent Dixon.

Before KENNEDY, C.J., and LOWENSTEIN and GAITAN, JJ.

KENNEDY, Chief Judge.

This is an appeal by Farmers and Merchants Insurance Company from a judgment declaring that its insurance policy issued to Dan Smith provided liability coverage to him against a claim of one Carl D. Dixon growing out of a collision between a vehicle driven by Dixon and a truck left in the public road by the alleged insured Dan Smith. The truck belonged to Dan's brother, Elgin, and was being driven by Dan in circumstances to be described later in the opinion. The "Personal Auto Policy" issued to Dan by the Insurance Company was on a 1970 Ford van owned by Dan, but it also provided liability coverage for "damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident". From this omnibus coverage, though, was excluded liability coverage for persons "Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation ..." The policy goes ahead to provide that the exclusion does not apply to a private passenger auto, to a pickup, panel truck or van owned by the insured, or to a trailer used with any such vehicle. (The vehicle involved was a 1966 International flatbed truck used for hauling logs, and no contention is made that it comes within the "exclusions from the exclusion".) It is the position of the Insurance Company that the accident in question falls unambiguously within the foregoing exclusion, and that the policy therefore furnishes no liability coverage for the accident.

The facts surrounding Dan's use of the truck at the time of the accident are as follows:

Twenty-one-year-old Dan lived with his mother and father in their rural home near Williamsburg, Missouri. His brother Elgin lived in a mobile home 150 yards away. Elgin was engaged in the logging business, which involved cutting down timber and transporting the logs to a sawmill for sale. From time to time Dan, when he was off from his regular employment, assisted Elgin in his business by transporting the logs in Elgin's truck. On this occasion, Dan had

been so engaged for three days. On the day of the accident, November 30, 1984, which was a Friday, Dan had been hauling logs from the "Bill Jamison farm", where the logs were being cut, to the Gastineau Lumber Company at New Bloomfield. He had delivered the third load and was returning at the end of the day toward home, a distance of 20 miles or so. The Elgin Smith mobile home and the home of his and Dan's parents, where Dan also lived, were in close proximity, inferably on a common tract of land. The truck was ordinarily parked across the road from the parents' home. Dan had reached a point two miles from home when the truck stalled. He was unable to get it started. Leaving it where it had stopped, he went to get a neighbor's assistance in towing it home. While he was gone, Carl D. Dixon, driving along the road, collided with the stalled truck.

The case presents the question whether Dan was "employed" in the logging business. The Insurance Company, of course, maintains that he was and that he therefore comes within the language of the exclusion. Mr. Dixon and the Smiths argue to the contrary that he was not. Mr. Dixon and the Smiths base their argument upon three facts shown by the evidence: 1) that Dan's work was gratuitous; 2) that his work for Elgin was merely occasional, incidental or casual; and 3) alternatively, that his employment had ceased as he was on his way home.

■■■ None of these arguments is persuasive. The fact that one's work for another is uncompensated does not remove him from the "employed" category. (Dan at other times had received compensation for his work for his brother, depending upon the profitability of business. On this occasion, however, he testified he was not paid and did not expect to be paid.) The test for the employment relationship is whether the hypothetical employer is entitled to exercise control over the work of the hypothetical employee. *Stegeman v. St. Francis Xavier Parish*, 611 S.W.2d 204, 206 (Mo. banc 1981); *Bollman v. Kark Rendering Plant*, 418 S.W.2d 39, 45 (Mo. 1967). It is clear from the uncontradicted testimony of Dan and Elgin that Dan was subject to Elgin's supervision, direction and control.

Neither does it remove Dan from the "employed" category that he only occasionally worked for Elgin. The proponents of coverage cite to *Daub v. Maryland Casualty Co.*, 148 S.W.2d 58 (Mo.App.1941), for the proposition that one who does an occasional odd job for a homeowner is "not employed" within the meaning of a homeowner's policy which protected the homeowner from liability to persons "not employed" by him. So far as we can determine, the authority of *Daub* has never been extended beyond its own facts. On the other hand, *Turnage v. State Farmers Mutual Tornado Ins. Co. of Missouri*, 388 S.W.2d 342 (Mo.App.1965), held that one who worked for another in the employer's usual business, although only upon occasion and on a short-term basis, was an employee. The court in *Turnage* distinguished *Daub* on the ground that in the latter case the employee was employed simply for odd jobs or chores which had nothing to do with the employer's business, whereas the *Turnage* employee was working at a necessary task incident to his employer's business. Dan was of course working at a necessary task incident to Elgin's logging business. *See also Farm Bureau Mutual Ins. Co. v. Farmers Mutual Auto. Ins. Co.*, 360 S.W.2d 325, 332 (Mo.App.1962).

Furthermore, Dan was still in Elgin's employ when he left the Gastineau Lumber Company in New Bloomfield and started home with the truck. The truck, as noted, was Elgin's regularly used in Elgin's business for log hauling. It was customarily and regularly parked overnight in the vicinity of his and Dan's home. It is inferable that it was there that Dan had gotten the truck that morning when he commenced his day's work. The cases are clear that one in Dan's situation is still in the employer's service as he returns the employer's truck to its place of storage, although incidentally the trip may bring him to his home or near his home. *See Sanderson v. Producers Comm. Ass'n.*, 360 Mo. 571, 229 S.W.2d 563 (1950); *Baldridge v. Inter-River*

*Drainage District of Missouri,* 645 S.W.2d 139, 140 (Mo.App.1982); *Turnage, supra,* at 348.

We hold that Dan was "employed" in his brother's logging business, as he drove the truck to its parking place on November 30, 1984, and as he left it to get help in towing it home. That being so, the accident comes squarely within the exclusion and the policy provides no liability coverage.

The judgment is reversed and the cause is remanded for the entry of a new judgment in agreement with the foregoing opinion.

All concur.