**AMERICAN STATES INSURANCE COMPANY, Plaintiff– Respondent,**

v.

**Allen BROECKELMAN, Defendant– Appellant,**

and

**Christopher Thornton, Defendant– Respondent.**

No. 21361.

Missouri Court of Appeals, Southern District, Division One.

Nov. 24, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 16, 1997.

Application for Transfer Denied Jan. 27, 1998.

claim made against him by Broeckelman. We reverse and remand.

American States issued a policy which provided both business auto and commercial general liability coverage to Bob Thornton ("Bob") and his wife, Carolyn Thornton ("Carolyn"), d/b/a A–1 Construction. The uncontested evidence, however, was that A–1 was the sole proprietorship of Bob, and that Carolyn was not an owner of the business.

A–1 used a 1971 International truck which contained a permanently mounted crane. The truck, which was titled in Bob's name, was apparently used only to transport the crane from job to job, and its engine was the power source to operate the crane and its boom.

On October 30, 1989, Broeckelman was working for A–1 Construction at a job site where the truck and crane were being used. As Chris was lifting debris with the crane, the boom broke, striking and injuring Broeckelman. Broeckelman filed suit against Chris seeking damages for his injuries. American States, when notified of the suit, provided a defense to Chris under a reservation of rights, and filed this declaratory judgment against Chris and Broeckelman. The trial court held that the policy provided no coverage for the claims against Chris, and entered judgment in favor of American States. It is from this judgment that Broeckelman appeals.

In reviewing a declaratory judgment, we are to affirm the decision of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *McDermott v. Carnahan,* 934 S.W.2d 285, 287 (Mo.banc 1996) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)).

In one of his three points on this appeal, Broeckelman contends that the trial court erred in holding that Chris was not insured for Broeckelman's claim against him under American States' business auto policy ("auto

Joseph P. Winget, Michael J. Patton, Springfield, for Defendant–Appellant.

James P. Barton, Jr., Kansas City, for Defendant–Respondent.

GARRISON, Presiding Judge.

Allen Broeckelman ("Broeckelman")[1] appeals from an adverse judgment entered in a declaratory judgment action filed by American States Insurance Co. ("American States"). At issue is whether American States' policy provides coverage to Christopher Thornton ("Chris") for a personal injury

---

1. For purposes of clarity, we sometimes refer to persons by their first or last names in this opin- ion. No disrespect is intended.

policy"). Contrary to the trial court's finding, he argues that, because of the provisions of an endorsement to the policy, his claim against Chris was not excluded by the fellow-employee exclusion.

■ The declaration page of the American States' business auto policy includes the 1971 International truck as a "covered 'auto.'" The policy contains the following pertinent provisions:

A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" ... to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

....

1. WHO IS AN INSURED

The following are "insureds:"

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own

....

The policy provides that the "autos" described in the declarations, as well as the following equipment, were "covered 'autos'":

C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS

....

2. "Mobile equipment" while being carried or towed by a covered "auto."

The "DEFINITIONS" section of the policy contains the following:

....

B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, but does not include "mobile equipment."

....

G. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

... .

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills....

It is thus apparent that the business auto policy first declares that the 1971 International truck in question is a "covered 'auto,'" it indicates that a premium was charged for that vehicle, but it then would exclude it from coverage because it meets the definition of "mobile equipment."

The trial court found that under these circumstances there was an ambiguity in the policy which should be resolved in favor of the insured, and held that the truck, with the attached crane, was a "covered 'auto.'" American States argues that this was an erroneous finding, and that the International truck should be considered as a "covered 'auto'" when it was being driven as an auto, but should be considered as excluded mobile equipment when the crane was being used as an independent immobile unit at a job site. It would thus distinguish between the type of use being made of the vehicle at the time of the accident. In support, it cites cases which distinguish between the uses being made of mobile equipment such as *State Farm Mut. Auto. Ins. Co. v. Farmers Ins. Group,* 569 P.2d 1260 (Wyo.1977) (a self-propelled concrete pumping machine), and *Home Indem. Co. v. Transport Indem. Co.,* 263 Cal.App.2d 100, 69 Cal.Rptr. 504 (1968) (a self-propelled crane). In our view, however, this argument ignores the fact that no such distinction is found in the policy. Rather, the policy first describes the truck as a covered auto, and then, by definition, seeks to exclude it from coverage entirely.[2]

---

**2.** The policy contains an exclusion providing that the insurance did not apply to "'(b)odily injury' or 'property damage' resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto.'" It also contains an exclusion providing that there is no coverage for "'(b)odily injury' ... arising out of the operation of any equipment listed in paragraphs 6.b and 6.c of the definition of 'mobile equipment.'" Paragraphs 6.b and 6.c of that definition refer to "cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers" and "air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment." No issue is raised concerning whether either of these exclu-

465

■ If an insurance policy is unambiguous, it is to be enforced according to its terms, but if it is ambiguous, it is construed against the insurer. *Rice v. Fire Ins. Exch.,* 946 S.W.2d 40, 42 (Mo.App. S.D.1997). Whether or not the language of an insurance policy is ambiguous is a question of law. *Id.* If the language of a policy is ambiguous (if there is duplicity, indistinctness or uncertainty in its meaning), and therefore open to different constructions, then it will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy. *Id.* Additionally, exclusionary clauses of policies are strictly construed against the insurer, and if they are ambiguous they will be construed favorably to the insured. *Id.* We conclude that under these standards, and the facts of this case, the trial court did not err in concluding that the truck in question was a "covered 'auto'" under the policy.

■ The trial court, however, found that Chris was not covered under the business auto policy because of an exclusion for bodily injuries to a fellow employee. This was based on the following provisions in the policy:

B. EXCLUSIONS

This insurance does not apply to any of the following:

. . . .

5. FELLOW EMPLOYEE

"Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

As indicated earlier, "insured" is defined in the policy as the named insureds, and also anyone else who was using a "covered 'auto'" with the named insured's permission. By reason of the severability clause of the policy,[3] "insured" in the Fellow Employee exclusion means any person or organization who qualifies as an insured. *Baker v. DePew,* 860 S.W.2d 318, 320 (Mo.banc 1993). The trial court, therefore, correctly found that Chris was an insured under the policy.

The parties stipulated that Chris and Broeckelman were fellow employees and that Broeckelman was injured in the course and scope of his employment. Accordingly, the trial court also found that coverage for Broeckelman's injuries fell within the "Fellow Employee" exclusion.

■ Broeckelman argues, however, that an endorsement to the policy effectively avoids the "Fellow Employee" exclusion. It provides:

The FELLOW EMPLOYEE Exclusion does not apply to "bodily injury" to your or any "family member's" fellow employees.

The policy defines "you" and "your" to be the named insured shown in the declarations. Because Carolyn is a named issured, Broeckelman argues that the fellow employee exclusion does not apply because she was a fellow employee of Broeckelman. The trial court concluded, however, that it was not relevant whether Carolyn was a fellow employee, because she was not the party who was sued.

■ Under Broeckelman's theory, the endorsement would eliminate the Fellow Employee exclusion as to any fellow employees of a named insured,[4] whether that insured was the subject of a claim or not. The parties cite no Missouri cases relating to the effectiveness of the endorsement when the named insured is not named in the suit or

sions are pertinent to the existence of coverage for use of a mechanical device which is attached to the "covered 'auto'" or if the mechanical equipment being used was other than that described in paragraphs 6.b and 6.c.

3. The definitions portion of the policy contains what is commonly referred to as the severability clause:

"Insured" means any person or organization qualifying as an insured in the Who is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

4. An employer cannot be a fellow employee of one of his employees. *Empire Fire and Marine Ins. Co. v. Dust,* 932 S.W.2d 416, 418 (Mo.App. E.D.1996). Accordingly, Broeckelman restricts his argument to whether Carolyn, rather than Bob, the sole owner of the business, was his fellow employee.

claim in issue, and our research has revealed none.[5]

The plain language of the endorsement does not contain a requirement that the named insured be the person against whom the claim is made. If it had been American States' intent to make that a condition of the endorsement, it could easily have done so by adding words to that effect. Because American States did not do so, it is our duty to interpret and enforce the contract of insurance as written. *Protective Cas. Ins. Co. v. Cook,* 734 S.W.2d 898, 905 (Mo.App. E.D. 1987).

■ The endorsement, as interpreted and applied by Broeckelman in this case, would read, "(t)he FELLOW EMPLOYEE" Exclusion does not apply to "bodily injury" to [Carolyn's] or any "family member's" "fellow employees."[6] The issue then, as framed by Broeckelman, is whether he was a fellow employee of Carolyn. If so, the endorsement provides coverage.

Bob operated A–1 as a sole proprietorship. Carolyn often performed various duties for A–1, including running errands, answering the phone, writing checks to suppliers and for payroll, taking information to the company's CPA, and anything else that her husband asked her to do for the business. She testified that she received no compensation for these services, and that she performed them in her capacity as Bob's wife, not as an employee. Bob and Chris both testified that Carolyn was not an employee of A–1. Broeckelman, however, testified that he believed Carolyn was an employee of the company because she always seemed to be either working in the office or running errands. There was no evidence that Carolyn performed any duties for the company on the day of the accident, October 30, 1989.

■ "Fellow employee" means "another employee of the same employer." *Baker,* 860 S.W.2d at 321 (quoting from *Zink*

*v. Employers Mut. Liab. Ins. Co.,* 724 S.W.2d 561, 563 (Mo.App. W.D.1986)). Here, the trial court, noting that the term "fellow employee" is not defined in the policy, found that Carolyn was not a fellow employee of Broeckelman on October 30, 1989, because there was no evidence that she was an employee on that date, or that her activities were directed by Bob. In doing so, the court said that it looked to cases decided under the Missouri Worker's Compensation Law. Broeckelman observes that Missouri courts have referred to worker's compensation cases in defining the meaning of "employee" in exclusion clauses of liability insurance policies. *See Ward v. Curry,* 341 S.W.2d 830, 836 (Mo.1960); *Auto Owners Mut. Ins. Co. v. Wieners,* 791 S.W.2d 751, 756 (Mo.App. S.D. 1990); *Turnage v. State Farmers Mut. Tornado Ins. Co. of Mo.,* 388 S.W.2d 342, 346 (Mo.App.Spfd.D.1965). The Worker's Compensation Act defines the term "employee" as follows:

> The word "employee" as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officers of corporations.

§ 287.020.1, RSMo 1994. Pursuant to this statute, "an uncompensated worker is an employee by appointment if he is in the service of an employer and that employer exercises control, or has the right of control, over the worker." *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204, 206 (Mo.banc 1981). Consideration of the element of control, or the right to control, in the worker's compensation definition of an employee is consistent with the Restatement (Second) of Agency § 220(1) (1958), which defines a servant as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."

---

5. Broeckelman does not contend that the severability clause of the policy would have any effect on the meaning of the term "your" in the endorsement. In *Dust,* 932 S.W.2d at 418, the court said that such an endorsement applies only to the named insured.

6. "Family member" is defined in the policy as a person related to the named insured by blood, marriage or adoption who is a resident of the named insured's household. Chris, the son of Bob and Carolyn, was not a resident of their household.

The issues in *Farmers And Merchants Ins. Co. v. Smith,* 742 S.W.2d 217 (Mo.App. W.D.1987), resemble those in the instant case. There, the question was whether a man who occasionally drove a logging truck for his brother, on a gratuitous basis, was "employed" in that business or occupation. If so, his liability policy would exclude coverage for the automobile accident in question. The court said that the gratuitous and occasional, incidental or casual character of the employee's work did not prevent him from being considered employed. *Id.* at 219. Referring to the issue of compensation, the court said that "the fact that one's work for another is uncompensated does not remove him from the 'employed' category.... The test for the employment relationship is whether the hypothetical employer is entitled to exercise control over the work of the hypothetical employee." *Id.* (citing *Stegeman,* 611 S.W.2d at 206, and *Bollman v. Kark Rendering Plant,* 418 S.W.2d 39, 45 (Mo.1967)). Neither American States nor Chris contend that the evidence was insufficient to show that Carolyn was subject to Bob's control when she was performing services for A–1. Our own review of the record indicates that she performed the jobs, and at the times, requested by him. This is consistent with the trial court's finding that Bob had the right to, and did, exercise control over Carolyn as to the work she performed for A–1. The trial court, however concluded, that Carolyn was not a fellow employee of Broeckelman simply because there was no evidence that she performed any services for A–1 on the date of the accident, or that Bob exercised control over her on that date.

Contrary to the finding of the trial court, the endorsement did not require that Carolyn be in the actual service of the business on the day of the accident to be considered a fellow employee of Broeckelman, or that Bob actually be directing her activities on that day. Likewise, there was no requirement that she be a party to Broeckelman's claim in order for the endorsement to be effective. Instead, the endorsement provides, by its plain terms, that the fellow employee exclusion is inapplicable as to bodily injury to a named insured's fellow employee without other conditions or requirements.

The interpretation of an insurance contract is a question of law. *Auto Owners Mut. Ins. Co. v. Wieners,* 791 S.W.2d 751, 757 (Mo.App. S.D.1990). An insurance policy is a contract and, as with any other contract, must be given effect by the plain terms of its agreement. *West v. Jacobs,* 790 S.W.2d 475, 477 (Mo.App. W.D.1990). The terms of the policy are to be interpreted in accordance with the ordinary meaning of the language used. *Id.* We are unable to, in effect, judicially supplement this endorsement with an interpretation which would require any of the conditions now argued by American States.

We hold that the trial court erred in finding that Carolyn, a named insured, was not a fellow employee of Broeckelman, and that the fellow employee exclusion bars coverage under the commercial auto policy for Broeckelman's claim against Chris. We reverse the judgment and remand the case to the trial court for the entry of a judgment holding that Chris Thornton has coverage for the claims of Broeckelman under American States' commercial auto policy.

Because of our holding, we do not reach Broeckelman's other two points of alleged error. The judgment is reversed and remanded.

PREWITT and CROW, JJ., concur.