741 So.2d 424 (1999)
SCOTTSDALE INSURANCE COMPANY
v.
NATIONAL SECURITY FIRE AND CASUALTY INSURANCE COMPANY.
2980621.
Court of Civil Appeals of Alabama.
August 6, 1999.
*425 Robert E. Parsons and Dorothy A. Powell of Parsons, Lee & Juliano, P.C., Birmingham, for appellant.
William Anthony Davis III and Philip G. Piggott of Starnes & Atchison, L.L.P., Birmingham, for appellee.
ROBERTSON, Presiding Judge.
In this declaratory-judgment action involving an insurance coverage dispute, Scottsdale Insurance Company ("Scottsdale") appeals from a summary judgment entered by the Jefferson County Circuit Court in favor of National Security Fire and Casualty Insurance Company ("National Security"). We reverse and remand.
Scott Communications, Inc., Alexander Broadcasting Company, Inc., and Auto-Owners Insurance Company sued Fred Webb, Sr., doing business as Webb Tower Service ("Webb"), and recovered $55,992.03 in damages arising from the collapse of a 350-foot radio tower in Dallas County on June 6, 1994. The collapse occurred while a 1979 model Ford F350 truck, owned by Webb and equipped with two winches and a boom-like crane, was being used to remove a "gin pole" from the tower. Scottsdale, the commercial general liability ("CGL") insurer for Webb, provided a defense for Webb and satisfied the judgment against it pursuant to a reservation of rights. At the conclusion of the action against Webb, Scottsdale brought a declaratory-judgment action against National Security, Webb's commercial automobile insurer, seeking a declaration concerning the insurers' respective rights and obligations and indemnification from National Security with respect to the judgment entered against Webb. After National Security and Scottsdale had both filed summary-judgment motions, the trial court entered a summary judgment in favor of National Security. Scottsdale appealed from that judgment to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
Rule 56, Ala.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact and 2) that the moving party is entitled to a judgment as a matter of law. The burden is on one moving for a summary judgment to demonstrate that no genuine issue of material fact is left for a jury to consider; the burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989). No presumption of correctness attaches to the *426 decision of the trial court regarding a summary judgment, and our review is de novo. Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App.1993) (citing Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635 (Ala.1992)).
The National Security policy of commercial automobile insurance issued to Webb that was in effect when the tower collapsed afforded liability coverage for "all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage'... resulting from the ownership, maintenance, or use of a covered `auto.'" The policy provided that a symbol on the declarations page of the policy would indicate the level of coverage afforded; the "schedule of coverages" on that page listed the symbol "7" next to "liability" coverage, indicating that Webb would have coverage for "specifically described autos," meaning "only those `autos' described in ITEM THREE of the Declarations for which a premium charge is shown." One of the vehicles described in Item Three is the 1979 Ford F350 truck that was involved in the tower collapse. The declarations page also shows that National Security charged Webb a premium of $482 for liability coverage on the truck.
In support of the summary judgment, National Security relies upon an exclusion from coverage incorporated into the policy's definition of the term "auto." In pertinent part, that definition states that the term "auto" does not include "mobile equipment," which is itself defined in the policy to include "[v]ehicles ... maintained primarily to provide mobility to permanently mounted ... [p]ower cranes." Thus, National Security contends, its policy excludes all losses arising from the use of Webb's 1979 Ford F350 truck because the truck falls within the policy's definition of "mobile equipment." Thus, we are confronted with a direct conflict in the language of the policythe same truck that is expressly listed as a covered automobile for purposes of liability coverage is also expressly excluded from coverage under another portion of the policy.
In resolving this conflict, we are not without authority. Under settled principles of Alabama law, "[i]nsurance contracts, like other contracts, are construed to give effect to the intention of the parties, and when that intention is clear and unambiguous, the insurance policy must be enforced as written." Nationwide Mut. Ins. Co. v. Hall, 643 So.2d 551, 558 (Ala. 1994). Moreover, each part of a policy of insurance must be read "in the context of all other provisions, in order to arrive at the true intent of the parties." Id. However, "insurance contracts are subject to the same general rules applicable to other written contracts; specifically, in case of doubt or uncertainty as to a policy's meaning, the terms of the policy are to be interpreted against the party that drafted them." American & Foreign Ins. Co. v. Tee Jays Mfg. Co., 699 So.2d 1226, 1228 (Ala.1997). Thus, "[i]f an action involves a dispute between two or more insurers and if the court concludes that an insurance contract is ambiguous concerning a condition of, an exclusion from, or a limitation on, coverage or liability, it must construe the ambiguity against the insurer that drafted the policy." Nationwide, 643 So.2d at 558.
Viewing the National Security commercial automobile insurance policy as a whole, as we must, we conclude that whether that policy covers bodily injury and property damage arising from Webb's use of the Ford F350 truck is unclear. While the policy's definition of "auto" excludes coverage for bodily injury or property damage that arises from the use of "mobile equipment," the declarations page of the policy includes the truck, which is a piece of "mobile equipment," in its schedule of covered autos owned by Webb, and shows that a substantial premium was charged for liability insurance on the truck. Moreover, there is no basis in the policy for distinguishing among the various "uses" to which the truck could be put; *427 the policy provides simply that National Security will pay all sums Webb must pay as damages caused by an accident and resulting from the "use" of a covered auto. We conclude that the conflict between the declarations and the definitions sections of the policy constitutes a patent ambiguity, and that the trial court erred in concluding that the National Security policy excluded coverage with respect to Webb's liability for the tower collapse.
In reaching this conclusion, we are mindful that courts in our sister states have reached similar conclusions based upon similar facts. Typical of these is American States Ins. Co. v. Broeckelman, 957 S.W.2d 461 (Mo.Ct.App.1997), in which an employee of the named insured was held to be entitled to coverage under a business automobile policy with respect to an action filed by a construction worker, who had been injured by a portion of a crane that had separated from its mounting on a 1971 model International truck. As in this case, the insurance policy in Broeckelman excluded "mobile equipment," such as "power cranes," from the definition of the term "auto," but listed the 1971 International as a "covered auto." The Missouri court affirmed the trial court's finding that the truck was a covered auto under the policy:
"American States argues that this was an erroneous finding, and that the International truck should be considered as a `covered "auto"` when it was being driven as an auto, but should be considered as excluded mobile equipment when the crane was being used as an independent immobile unit at a job site. It would thus distinguish between the type of use being made of the vehicle at the time of the accident. In support, it cites cases which distinguish between the uses being made of mobile equipment such as State Farm Mut. Auto. Ins. Co. v. Farmers Ins. Group, 569 P.2d 1260 (Wyo.1977) (a self-propelled concrete pumping machine), and Home Indem. Co. v. Transport Indem. Co., 263 Cal. App.2d 100, 69 Cal.Rptr. 504 (1968) (a self-propelled crane). In our view, however, this argument ignores the fact that no such distinction is found in the policy. Rather, the policy first describes the truck as a covered auto, and then, by definition, seeks to exclude it from coverage entirely.
"If an insurance policy is unambiguous, it is to be enforced according to its terms, but if it is ambiguous, it is construed against the insurer. Whether or not the language of an insurance policy is ambiguous is a question of law. If the language of a policy is ambiguous (if there is duplicity, indistinctness or uncertainty in its meaning), and therefore open to different constructions, then it will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy. Additionally, exclusionary clauses of policies are strictly construed against the insurer, and if they are ambiguous they will be construed favorably to the insured. We conclude that under these standards, and the facts of this case, the trial court did not err in concluding that the truck in question was a `covered "auto"' under the policy."
957 S.W.2d at 464-65 (citations and footnotes omitted).
Other courts have reached the same conclusion as that reached by the Broeckelman court. See Commercial Union Assur. Cos. v. Aetna Cas. & Sur. Co., 455 F.Supp. 1190, 1193-94 (D.N.H.1978) (accident involving trench-digging machine that was listed on an "automobile schedule" and for which a premium was charged; the machine was covered, despite machine's status as "mobile equipment"); St. Paul Fire & Marine Ins. v. Commercial Union Assur., 606 P.2d 1206, 1208 (Utah 1980) (with respect to vehicle equipped with a cement pump, endorsement identifying vehicle as an "automobile," rather than definition of "mobile equipment," held controlling as to coverage); American States Ins. Co. v. Dick's Crane Serv., Inc., 399 So.2d *428 442, 443-44 (Fla.Dist.Ct.App.1981) (declining to order trial court, on remand, to grant insurer's summary-judgment motion, based upon automobile policy's "mobile equipment" exclusion, because policy schedules showed that a premium had been charged for coverage of the truck crane at issue); United States Fid. & Guar. Co. v. Gillis, 164 Ga.App. 278, 282, 296 S.E.2d 253, 256 (1982) (affirming a summary judgment in favor of insureds under a commercial automobile policy where, among other things, the only truck listed as a "covered auto" fell within the definition of "mobile equipment"); and Canal Ins. Co. v. Insurance Co. of North America, 315 S.C. 1, 3, 431 S.E.2d 577, 579 (1993) (holding that trial court properly construed "mobile equipment" exclusion as not prohibiting coverage for the only vehicle contemplated by the parties to the policy; citing Gillis, supra). But see Mouton v. Armco, Inc., 431 So.2d 776, 779 (La.Ct.App.1982) (2-1 decision on rehearing), rev'd on unspecified grounds, 434 So.2d 1106 (La.1983).
Based upon the facts of this case and the authorities cited, we conclude that the trial court erred in entering the summary judgment in favor of National Security. That judgment is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., dissent.
THOMPSON, Judge, dissenting.
I disagree with the conclusion that the policy is unclear regarding the coverage of Webb's Ford F350 truck. National Security's automobile policy provided coverage for damage resulting from the ownership, maintenance, or use of a "covered auto." The policy specifically defines "auto" to include motor vehicles, but specifically excludes "mobile equipment." The term "mobile equipment" is defined to include "vehicles which are maintained primarily to provide mobility to permanently mounted cranes." These terms are clear and unambiguous. Other jurisdictions, dealing with similar cases, have held policy terms containing identical language to be clear and unambiguous. See Russo v. Veran, Inc., 488 So.2d 372 (La.Ct.App.1986), and Schmidt v. Luchterhand, 62 Wis.2d 125, 214 N.W.2d 393 (1974).
Only in cases of genuine ambiguity or inconsistency is it proper to resort to rules of construction. The fact that the parties advance conflicting constructions of a policy provision does not make the provision ambiguous. Canal Ins. Co. v. Old Republic Ins. Co., 718 So.2d 8 (Ala.1998). When language in an insurance policy is clear and unambiguous, courts are not permitted to rewrite the policy to create a result contrary to the intentions of the contracting parties. Id. In the present case, Scottsdale Insurance Company issued a commercial general-liability policy that specifically covered mobile equipment and excluded coverage for damages arising out of the use of an "auto."
It is undisputed that the truck was stationary and that the accident involved only the crane portion of the truck. Webb's truck was not traveling on a public road, nor was it transporting equipment at the time the accident occurred. Therefore, at the time of the accident the truck was not being used as an "auto" under the terms of the automobile-liability policy. Other jurisdictions have determined that accidents involving cranes or other equipment permanently attached to a truck covered under an automotive policy, did not arise from the "use of the truck." See Waldbillig v. State Farm Mutual Automobile Ins. Co., 321 N.W.2d 49 (Minn.1982); and Schmidt, supra.
Because I conclude that this loss was properly covered under Scottsdale's commercial general-liability policy and not under the automobile-liability policy in *429 question, I would affirm the summary judgment in favor of National Security.
CRAWLEY, J., concurs.