James LITTLE and Carol Little,
Plaintiffs–Respondents,

v.

AMERICAN STATES INSURANCE
COMPANY, Defendant–
Appellant,

and

Feed Commodity Center, D & M
Materials, Inc., and Ervin
Fisher, Defendants.

No. 26522.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 15, 2005.

T. Michael Ward, St. Louis, James B. James, and Krisitie S. Crawford, Brown & James, P.C., Springfield, for Appellant.

Tim Gammon, Sprinfield, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

American States Insurance Company ("American States") appeals from a summary judgment entered against it in an equitable garnishment action brought pursuant to Section 379.200 [1] by James and Carol Little ("Plaintiffs") to satisfy a judgment they obtained against Feed Commodity Center ("Feed Commodity"), D & M Materials, Inc., ("D & M"), and Ervin Fisher ("Fisher") (collectively referred to as "Defendants").[2] We affirm.

The issue on this appeal is whether American States' insurance policy provided coverage for damages sustained by Plaintiffs when their dairy cattle consumed contaminated feed sold by Defendants in 1996 and 1997. American States issued a Commercial Insurance Policy to D & M for the policy period of 10–26–95 to 10–26–96 (the "95–96 Policy") providing Commercial Liability, Property and Inland Marine coverages. The Commercial Liability policy insuring agreement provided, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated. Section 379.200 provides, in pertinent part that "[u]pon the recovery of a final judgment against any person, firm or corporation by any person ... for loss or damage on account of ... damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company ... and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

2. Although the equitable proceeding authorized by Section 379.200 is sometimes referred to as an equitable garnishment action, they are not garnishments at all, but rather a suit in equity against the insurance company to seek satisfaction of one's judgment under an insurance policy. *Wood v. Metropolitan Property & Cas. Co.*, 10 S.W.3d 571, 573 (Mo.App. E.D.2000) *overruled on other grounds, Johnston v. Sweany*, 68 S.W.3d 398, 404 (Mo. banc 2002).

Under the Limits of Insurance section of the policy, it was stated that for Commercial General Liability, the "General Aggregate Limit (Other Than Products–Completed Operations)" was $750,000. Below that appeared the following:

| CODE | CLASSIFICATION-PREMIUM BASIS | EXPOSURE | RATE | PREMIUM |
|------|------------------------------|----------|------|---------|
| 12583 | COMMERCIAL GENERAL LIABILITY OTHER THAN PRODUCTS-COMPLETED OPERATIONS <br><br> **LOCATION #1 ** <br> FEED, GRAIN OR HAY DEALERS GROSS SALES (PER $1,000) | 3,500,000 | .5940 | $2,079.00 |

The policy also stated that one of the forms applicable to that coverage part was "CG2104 (1185)—EXCL—PRODUCTS/COMPLETED OPS HAZARD." Attached to the policy was the following endorsement:

### EXCLUSION—PRODUCTS— COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included within the "products—completed operations hazard."

The definitions in the policy included the following:

14. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

. . . .

c. This hazard does not include "bodily injury" or "property damage" arising out of:

. . . .

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

. . . .

17. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

. . . .

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of any of "your product," and

b. The providing of or failure to provide warnings or instructions.

. . . .[3]

A similar policy was issued for the period of 10–26–96 to 10–26–97 (the "96–97 Policy") except that part of the definition under "Products—Completed Operations Hazard" ("PCOH") was changed. Instead of providing that PCOH did not include bodily injury or property damage arising out of "Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations," it provided that it did not include bodily injury or property damage arising out of "Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit." The 96–97 Policy also included a notice to policyholders' clarifying coverage. It stated that "The Definitions Section has also been amended in these policies . . . to more clearly state that products or operations that are subject to the General Aggregate Limit are excluded from products-completed operations coverage."

Plaintiffs filed suit against Feed Commodity, D & M and Fisher based on varying theories, alleging damage as a result of their dairy cattle consuming feed purchased from those defendants. In March 2002, the Circuit Court of Howell County entered a judgment in that suit in favor of Plaintiffs for $221,832, jointly and severally. In its judgment, the court found that those defendants sold dairy feed to Plaintiffs in 1996 and 1997 contaminated with urea and non-protein nitrogen in the form of chicken litter or manure, arsenic and aflatoxin; that it was unfit for consumption by Plaintiffs' dairy cattle; and that Plaintiffs sustained damage as a result of their dairy cattle consuming the feed.

Plaintiffs then filed a petition, pursuant to Section 379.200, which resulted in the judgment that is the subject of this appeal. Motions for summary judgment were filed by both American States and Plaintiffs. In its motion for summary judgment, American States took the position that since the policy excluded coverage for the PCOH, there was no coverage for the damages represented in Plaintiffs' judgment.

In their cross-motion for summary judgment, Plaintiffs took the position that the policies included general liability for injuries or property damage to third parties, and that American States was obligated to pay those sums that the insured becomes legally obligated to pay as damages for bodily injury or property damage "to which this insurance applies." They pointed out that in both the 95–96 Policy and the 96–97 Policy, the definitions of PCOH included exceptions to that coverage, and thus exceptions to the exclusion of PCOH coverage. They also pointed out that in the 96–97 Policy the definitions were amended to "more clearly state that products or operations that are subject to the General Aggregate Limit are excluded from products-completed operations coverage." Plaintiffs argued that both the 95–96 and 96–97 Policies designated that the "Classification—Premium Basis" for "Commercial General Liability Other Than Products–Completed Operations" was "Feed, Grain [o]r Hay Dealers." As a consequence, Plaintiffs contended:

---

**3.** American States began insuring D & M in 1990. The original policy contained the same pertinent provisions as the 95–96 Policy except that the endorsement excluding injury or damage included within the PCOH was signed on behalf of D & M. The records of American States relating to the 1990 policy also included a "Commercial Instructions" form that contained the following statement: "Feed & Grain Dealer—[n]ot just [m]ill. Been in business 20 years. Exclude [p]roducts—specifically asked to by Insured."

Because 14(c) by its plain language removes products defined "in this Classification Part" from the PCOH, neither that coverage nor [the Exclusion stating that the policy did not apply to bodily injury or property damage included within the PCOH] are relevant. Coverage is under general liability, subject to the general aggregate limit. The Notice to Policy holders ... states "the [D]efinitions Section has also been amended ... to more clearly state that products or operations that are subject to the Aggregate Limit are excluded from products completed operations coverage." What does that mean if not that products such as the "bulk feed" and "retail feed" added by the policy change worksheet ... and by implication included in and subject to the aggregate limit ... are covered there, and are thus excluded from PCOH coverage and therefore not subject to the exclusion from coverage by [the Exclusion attached to the policy].

The trial court entered judgment denying American States' motion, granting Plaintiffs' motion, and entering judgment against American States for $221,832 plus interest. In denying the motion for summary judgment filed by American States and in granting the cross-motion filed by Plaintiffs, the trial court noted that the motions presented the "dispositive issues of was there coverage or alternative ambiguity under the policies." It also noted that the "policy" included general liability coverage, a section defining and limiting coverage for PCOH, and an endorsement specifically excluding damage or injuries included with the PCOH. It quoted the portion of the exceptions to the PCOH definition from the 95–96 Policy providing that PCOH did not include bodily injury or property damage arising out of "products or operations for which the classifications in this Coverage Part or in our manual of rules includes products or completed operations." With reference to that provision, the court said that " 'Classification' is a general descriptive term referring to the operations at risk and as such the rate used, the kind of [sic] nature of the coverage or form, type of business or particular elements of coverage; the policies at issue here show a classification of 'Feed, Hay or Grain Dealers.' " It also found that while the reference to "our manual of rules" is not uncertain "as the meaning of that phrase is distinct even though the insured may not be given the manual of rules," but "the policy does not reveal what is meant or referenced by 'classification in this Coverage Part,' and that phrase is thus ambiguous."

The trial court concluded:

1. Inclusion of "classifications in this Coverage Part" in 14(c) renders 14 indefinite and uncertain as to what classification, products, or operations are or are not covered under the PCOH and thus excluded by the exclusion/endorsement.

2. "Classification in this Coverage Part" is not further defined or referenced, and an ordinary person of average intelligence would not know where else to look or what other classification(s) (or to be precise which items within what undefined and non-specific classifications) are or are not exempted under 14(c) of the PCOH and thus unaffected by the exclusion. Because the exclusion/endorsement eliminates insurance only for what is within the PCOH, it is likewise indefinite, uncertain, and thus ambiguous. That ambiguity will be construed against American States and in favor of coverage.

3. Absent the PCOH and exclusion, the general liability form insuring "those sums the insured becomes legally obligated to pay because of 'bodily injury' or 'property damage' to which this insurance applies," covers the claims here. American States conceded as much.

4. . . . .

In sum, this court finds "Classifications in this Coverage Part" is indefinite and uncertain, creating ambiguity first in the "PCOH" and then in the exclusion/endorsement. Without the PCOH (and thus the exclusion/endorsement) there would be coverage, thus here there is coverage.

This appeal followed.

■ In a single point relied on, American States contends that the trial court erred in entering summary judgment against it, and in denying its motion for summary judgment, because its policy afforded no coverage to satisfy the underlying judgment against its insured, D & M, in that:

1.) Plaintiffs' claims against D & M were for property damage sustained to their cattle herd that had consumed contaminated feed sold by D & M;

2.) American States' policies exclude coverage for all property damage occurring away from D & M's premises arising from D & M's products and work; and

3.) Contrary to the trial court's judgment, American States policy is not ambiguous based on the exception to the policy's definition for the [PCOH] because the policy's classification, as set forth in the commercial liability coverage part declarations, states that no products' completed-operations coverage is afforded under the policy.

As this indicates, the dispute in this case centers on whether an endorsement to the policy excluding coverage for PCOH, and the definitions relating to that coverage, are effective to exclude coverage for this loss.

As we interpret this judgment, the trial court reasoned that although coverage for PCOH was excluded in the policy, that exclusion only applied to bodily injury or property damage falling within the definition of PCOH; the definition of PCOH in the 95–96 Policy[4] included exceptions which would not fall within coverage for PCOH; since the exception to the definition of PCOH was ambiguous, it was impossible to tell what classifications, products or operations were or were not covered under PCOH and thus were or were not excluded from coverage by rea-

---

4. We note that the Plaintiffs' claims, for which they received judgment against the original defendants, were based on the sale of contaminated feed in 1996 and 1997. The judgment entered in favor of Plaintiffs in that case was preceded by Findings and Conclusions making it clear that the judgment was based on damages sustained as a result of the contaminated feed sold "[i]n 1996 through 1997." The 95–96 Policy was effective from October 26, 1995 to October 26, 1996. The 96–97 Policy was effective from October 26, 1996 to October 26, 1997. The judgment in this case was premised on an exception to the definition of PCOH in the 95–96 Policy that the trial court concluded was ambiguous. That exception was amended for the 96–97 Policy, but there was no finding as to whether that exception was also ambiguous so as to result in a finding of coverage for the damages sustained during that policy period. There is no issue raised on this appeal, however, relating to the effect of the judgment being based solely on the contents of the exception under the 95–96 Policy definition of PCOH. We will proceed, as did the trial court, to consider the provisions of the 95–96 Policy.

son of the policy exclusion for PCOH coverage.

■ In an appeal from a summary judgment, the appellate court reviews the record in the light most favorable to the party against whom judgment was entered, according that party the benefit of all reasonable inferences from the record. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record and the law, the appellate court need not defer to the trial court's grant of summary judgment. *Id.* The purpose of summary judgment is to identify cases where there is no genuine dispute as to the facts and the facts as admitted show a legal right to judgment for the movant. *Id.* at 380. To defeat a motion for summary judgment, the non-movant need only show that there is a genuine dispute as to the facts underlying the movant's right to judgment. *Id.* at 381–82.

■ The provisions of an insurance policy are read in the context of the policy as a whole. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998). Language in a comprehensive liability policy, as with any other contract, must be given its plain meaning without unduly straining the language. *Hawkeye–Security Ins. Co. v. Davis*, 6 S.W.3d 419, 424 (Mo.App. S.D.1999). If an insurance policy is unambiguous, it will be enforced according to its terms, but if it is ambiguous, it will be construed against the insurer. *Id.* Whether or not the language of an insurance policy is ambiguous is a question of law. *American States Ins. Co. v. Broeckelman*, 957 S.W.2d 461, 465 (Mo.

App. S.D.1997). If the policy language is ambiguous (if there is duplicity, indistinctness or uncertainty in its meaning), and therefore open to different constructions, then it will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy. *Id.* "[E]xclusionary clauses of policies are strictly construed against the insurer, and if they are ambiguous they will be construed favorable to the insured." *Id.*

We are compelled to affirm the judgment appealed from. Under its point relied on, American States contends that the 95–96 Policy is not ambiguous based on the exception to the definition of the PCOH "because the policy's classification, as set forth in the commercial liability coverage part declarations, states that no products-completed operations coverage is afforded under the policy." We interpret this contention to be that regardless of the definition of the exception to PCOH coverage, the statement on the Commercial Liability Coverage declaration page under "Classification–Premium Basis" ("Commercial General Liability Other Than Products–Completed Operation") clearly shows that there was to be no such coverage.[5] Thus, American States argues, "[t]he classification stated in the declarations eliminates any uncertainty as to the existence of [PCOH] coverage under the 1995–96[P]olicy and renders the exception to the [PCOH] definition inapplicable. The policy's classification states that only commercial liability coverage, and not products-completed operations coverage, is afforded."

American States' position, however, leaves unanswered the question of whether the damages claimed in this case were or were not included within the definition of

---

5. The issue for decision on appeal is that contained in the point relied on. *Young v.*

*Ernst*, 113 S.W.3d 695, 697 (Mo.App. S.D. 2003).

PCOH, and thus excluded under the policy. Because of the definitions under PCOH, it is clear that not all property damage arising out of products or operations were to be included in PCOH coverage and thus excluded under the policy. As stated earlier, the definition included:

14. c. This hazard does not include "bodily injury" or "property damage" arising out of:

....

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

By specific language, the definition states that some property damage arising from products or operations are not included within PCOH coverage. If they are not included within that coverage, then logically they would not be included within the endorsement excluding PCOH from coverage. The problem comes in identifying, from the policy language, the products or operations which do not, under that definition, fall within PCOH coverage.

According to the exception to the definition, there are two places to look to determine if a product or operation is not included within the PCOH definition, i.e. whether the product or operation is one for which American States has included products or completed operations coverage. One is the "classification in this Coverage Part." This is the portion of the definition that the trial court found to be ambiguous.

There are at least two ways of interpreting the phrase "classification in this Coverage Part." "[T]his Coverage Part" clearly refers to the part of the policy relating to Commercial General Liability Coverage as opposed to Commercial Property Coverage and Commercial Inland Marine Coverage, both of which were also included in the

policy. Beyond that, this portion of the analysis becomes more tenuous because of the phrase "the classification." Although the policy does not define "classification," the Commercial Liability Coverage Declarations included, under "Classification— Premium Basis" the words "Commercial General Liability Other Than Products— Completed Operations" and also "Feed, Grain Or Hay Dealers." Does "classification" mean "Commercial General Liability Other than Products–Completed Operations"? If it does, PCOH is clearly not included in the coverage. However, the definition did not say "the type of coverage for which the classification in this Coverage Part . . . includes products or completed operations." This is how American States obviously interprets the definition. That is contrary, however, to the specific wording used.

■ The definition excludes from the definition of PCOH, property damage arising out of *"products or operations* for which the classification in this Coverage Part . . . includes products or completed operations." (emphasis added). The reference to "products or operations" indicates that in this case it would relate to the "[f]eed" component of "Feed, Grain or Hay Dealers." But how is one to determine if the "classification" under the Commercial General Liability Coverage for feed, or perhaps more specifically feed dealer, "includes products or completed operations"? Does that mean that whether "products or completed operations" are included is determined by looking only under the "Classification" section of the declaration page? Or does it mean that the "classification" of the product or operation may inherently include products or completed operations with American States? If so, where would one look to make that determination? The uncertainty of the answer to that question was the basis for the judgment entered in

this case. "The provisions of an insurance policy are ambiguous when, due to duplicity, indistinctness, or uncertainty in the meaning of the words used, the policy is reasonably open to different constructions." *Farm Bureau Town & Country Ins. Co. of Mo. v. Barker*, 150 S.W.3d 103, 106 (Mo.App. W.D.2004). We agree that this portion of the policy is ambiguous and must be construed against American States.

 The exception to the definition of PCOH also provides that that coverage does not apply to property damage arising out of products or operations for which the classification in this Coverage Part *"or in our manual of rules"* includes products or completed operations. The italicized part of the provision, phrased in the disjunctive, does not save the exception to the definition from being ambiguous. American States' "manual of rules" was not furnished to the insured. Ambiguity exists when an insurance contract can be reasonably construed in more than one way and construction cannot be determined within the boundaries of the four corners of the instrument. *Frost v. Liberty Mut. Ins. Co.*, 828 S.W.2d 915, 921 (Mo.App. W.D. 1992). We look only to the language of the policy in determining if its provisions are ambiguous. *McDonough v. Liberty Mut. Ins. Co., Inc.*, 921 S.W.2d 90, 93 (Mo.App. E.D.1996). In this case, the provisions of a manual of rules were not included in the policy; the specific manual referred to was not apparent; and there was no way an insured, by reference to the terms of the policy, could determine whether American States' manual of rules included products or completed operations coverage for the product or operation from which the property damage arose.

Based upon the issues and the record presented to us, we are unable to conclude that the trial court erred in entering the judgment. The judgment is affirmed.

PREWITT and RAHMEYER, JJ., concur.